## FILLY V. BRACE.

If A. recommends B. to C. for a certain sum, and thereupon C. trusts B. and takes his notes payable at a certain time, and B. gives A. his note for the same sum, payable one month after B.'s note is payable to C. conditioned that, if he holds A. harmless from said debt to C. then said note to be void, if B. fails to pay said debt to C. before his note is payable to A. he will be liable upon it.

ACTION on note, dated 25th of February A. D. 1789, for £24 lawful money, payable on the 1st of November then next, with interest; writ dated the 16th day of January A. D. 1790.

Plea in bar — That there was indorsed on the back of said note the following conditions, viz. The consideration of the within note is such, that the within named Filly did give said Brace a recommend to Elisha Cornish for fifteen or twenty

pounds lawful money; if the said Brace doth hold the said Filly harmless from that debt, then the within obligation to be void; otherwise to be in force: Averring that the plaintiff had never been damnified, but had ever been saved harmless from said recommendation.

Plaintiff replied — That at the special instance and request of the defendant he gave him the following recommendation, viz. November 20th, A. D. 1788, This may certify to you Mr. Elisha Cornish, that I will warrant Mr. Nathaniel Brace's note good for fifteen or twenty pounds. Jonathan Filly, Jr. That on the credit of said writing, said Cornish trusted the defendant and took his notes, one for £13, dated 20th November A. D. 1788, and one £8 10s., dated the 21st of said November both payable on the 1st of October then next; that the defendant had never paid said notes nor either of them; that the defendant on said 1st of October A. D. 1789, was wholly insolvent, and ever since had been totally unable to pay said notes; that on the 7th of October A. D. 1789, said Cornish put said notes in suit; recovered judgments and executions upon them against said Brace, which executions on the       day of August A. D. 1790, were returned *non est;* that thereupon the plaintiff became liable to pay said debts to said Cornish, who had prosecuted him and compelled him to pay said debts; and so the plaintiff had been damnified, etc.

The defendant rejoined — Traversing the plaintiff's having been compelled to pay said debt, or his having paid it in any manner, and demurred to the residue of the reply.

Judgment — Plaintiff's reply insufficient; upon the ground, that the plaintiff's being liable for said debt is not a cause of action. Hart v. Bull, Kirby's Rep. 396; and the case of Brentnal v. Helms et al. adjudged New Haven, August Term, A. D. 1791. Further, the plaintiff's action was commenced long before the executions of Cornish against Brace were returned *non est inventus;* that it did not appear at the time when this action was commenced, but that Brace would pay said executions, and save the plaintiff harmless.

Root, J., dissented. The case of Hart v. Bull, does not compare with this case. That was upon an indemnifying bond

given by Bull after Hart had become liable upon the notes, and was sued the next day; the bond therefore could not have been given to indemnify against a mere liability, but an actual damnification upon the notes, and Bull ought to have had a reasonable time allowed before a suit was brought on the bond.

Nor does the case of Brentnal and Helms apply in this case. That was an action brought upon a promise of general indemnity, against an obligation entered into by the plaintiff, with the defendants, to the treasurer of the state, at their special request, and for their sole duty. The court determined in that case, that a mere liability to be sued, was not a good cause of action, upon a general indemnity. See New Haven, August Term, A. D. 1791.

The notes given by Brace to Cornish were due and payable on the 1st of October A. D. 1789. The recommendation was given on the 20th of November 1788. The note on which, etc. given to the plaintiff for indemnity, was dated the 25th of February A. D. 1789, payable on the 1st of November A. D. 1789; and delivered to the plaintiff with this condition indorsed upon it. The consideration of the within note is such, that the within-named Filly, did give said Brace a recommend to Elisha Cornish, for fifteen or twenty pounds lawful money; if the said Brace, does hold the said Filly harmless, from that debt, then the within obligation to be void, etc.

The true construction of these transactions and of the note in suit, appears to be this; you have recommended and warranted my notes to E. Cornish for £20, which are due on the 1st of October A. D. 1789 — in consideration thereof, I Brace give you my note payable the 1st of November A. D. 1789, with this only condition and saving; that if I pay said Cornish his debt, by the 1st of October when it is due, or before the 1st of said November and save you harmless, then this note shall be void; otherwise shall be an absolute note for the sum therein specified. Upon this construction it is clear, that as Brace had failed of paying said debt to said Cornish by the 1st of November and thereby saved said Filly harmless, he had become liable upon his note to Filly, the same as an absolute note — which places the case upon quite a different footing, from that of a general promise of indemnity.

This judgment was reversed upon a writ of error in the Supreme Court of Errors, June A. D. 1794; for the reasons following, viz.

It has been a question much discussed, whether a person having become surety for another and having taken any obligation to save him harmless on account of his having become surety, may have an action on the ground of a damnification, before he has actually paid the debt; or at any rate, before judgment is recovered against him and his body taken by the execution. There can be but little doubt concerning this question if it be taken up on the foot of reason only, without reference to any legal decisions. There certainly can be a damnification, a loss, or suffering, without paying a farthing of money towards the debt, or without being committed on the execution. It would be absurd to say that an arrest of a man's person on mesne process and obliging him to procure bail, or putting him to the necessity of attending court, on a suit brought against him for the debt, would be no damnification.

But the authorities are not silent on this subject: In Croke Eliz. page 53 is reported a case in favor of the sheriffs of the city of Norwich against Bradshaw, for an escape out of prison. The defendant after verdict against him, moved in arrest of judgment, because it was alleged in the declaration, that the plaintiffs were merely chargeable with the debt, but did not say that they were charged with it, nor showed that they were otherwise damnified. But it was determined by the court, that on a liability to be sued by the creditor, an action might be maintained by the sheriffs. It is true the court said that the defendant did wrong to the plaintiffs by the escape and therefore was liable to them, but though the court so said, they never could have adjudged the defendant to have been liable to the sheriffs for the escape merely, if the creditor had been barred of his suit against them.

In Cro. Eliz. 123 is reported a case in favor of Barkley and Gibbs, bailiffs of the city of Worcester, v. Kempstow. The declaration states that one Worsely was arrested in an action returnable before the bailiffs, chamberlain and aldermen of the city of Worcester, and that the plaintiffs were keepers of the prison in the above said city, and that the defendants owned a house adjoining to said prison, in which the bailiffs had used to commit their prisoners to be safely kept; that Worsely being arrested was by the plaintiffs committed to prison, and the defendants having said house adjoining the prison, in consideration that the plaintiffs committed the prisoner to him to keep, by which he might make his commodity, by uttering his meat and drink, and might have as great benefit as he used to have, promised to keep him safely and save the plaintiffs harmless of all escapes; whereupon they committed the prisoner to his house to keep, etc. and he such a day suffered him to escape, etc. Upon *nonassumpsit* pleaded, a verdict was found for the plaintiffs — and it was moved in arrest of judgment, that the plaintiffs did not show how they were damnified, etc. but the motion was overruled by the court, because to use their own words, " Immediately on the escape, they were damnified and in danger of being sued, and might sue the defendants presently and not tarry till they were sued."

In Cro. Eliz. 264 is reported the case of Ruth against Redgebey, which was an action of debt on an obligation to save harmless J. Robinson on an obligation; and on the plea of *nondamnificatus*, it was replied that judgment had been recovered by said Robinson against the plaintiff. The defendant rejoined, that he himself had retained an attorney in said suit, and the plaintiff was at no expenses, nor arrested on it, nor were his goods or lands seized; and that after judgment he was not damnified; a demurrer was taken to the rejoinder. All the court resolved for the plaintiff, for that by the very judgment he was damnified; and that if after the judgment he had paid the debt it would not serve, for he was damnified before.

Agreeably to this doctrine is that laid down in the case of Bothright against Harvey in Cro. Eliz. 369. In Broughton's case also, 5 Cook, 24, a quotation is made of the year-book 18 Ed. 4, 27 C. wherein it was said by Bryan and Littleton, " that terror of suit, so that one dare not go about his business is a damnification, although he be not arrested or forced by process," etc.

It was argued by the counsel for the defendant in error, that if there should be any doubt with respect to the ancient decisions, yet those of modern times have been decidedly against the plaintiff in error; but on careful examination it will be found that the ancient and modern decisions have been correspondent with each other. The modern decisions have been on the question, whether an action can be maintained against a bankrupt after an act of bankruptcy committed and a certificate obtained, by one who has been surety for him to his creditors, if such creditor on neglect of payment commence his action against the surety, before the bankruptcy, but the surety doth not settle the debt either by paying the money, or being committed to prison, till after the bankruptcy, in such case the courts in Westminster have decided that a recovery may be had against the bankrupt; because though the surety previous to the bankruptcy might have a demand sounding in damages against the bankrupt, yet he had no ascertained debt which he could swear to and prove under the commission; it did not become properly speaking a debt, before the payment of the money, or (which is esteemed equivalent to paying the money) before a commitment of the surety to prison on the execution. It is true Lord Mansfield in the case of Taylor against Mills and Magnall, Cowper, 527, speaking of Taylor at the time when Mills, etc. committed an act of bankruptcy says, " He was not damnified at that time, and till damnified (which he could not be till he had been called upon and had paid) he could not bring an action."

The case was this — Taylor was surety for the debt of Mills and Magnall, which became due before their bankruptcy; but

he did not pay it until after their bankruptcy. The question was, whether he should recover against them on account of having paid this debt, and Lord Mansfield rightly determined that he ought to recover, because he not having paid the debt till after the bankruptcy, could not come in as a creditor under the commission. But his assertion, if it be so understood, that an action never could be brought by the surety before he had paid the debt of his principal, was a mere obiter opinion, and not applicable to the cause then before him; and besides is contradictory to common sense and to other judicial determinations on the subject. It was enough in that case that Taylor could not swear to any precise debt before the bankruptcy, and therefore he ought to recover after.

The cases of Chilton against Wiffin and Cromwell, and Goddard against Venderheyden, the former reported in 3 Wilson, 13, the latter in 3 Wilson, 262, and also in 2 Black. 794, were relied on by the counsel for the defendant in error, as being in point for the defendant. But both of those causes appear to be decided on the ground heretofore alluded to, and not on that on which the present case stands. The question in those cases was, whether the plaintiffs having paid debts for the defendant, after their (the defendants) bankruptcy, should recover against them, notwithstanding they had been sued for and liable to pay the same debts before the bankruptcy; and it was determined by the court that they should recover.

In the case of Chilton against Wiffin and Cromwell, the plaintiff did not pay the money at all, but was committed to prison on the execution, and the court determined that his being committed to prison was equivalent to his paying the debt, or in other words, that the debt by such commitment was ascertained against the defendant. The court in giving their opinion in page 14, say that until the plaintiff was imprisoned, no debt was owing from the defendant to the plaintiff, and that the defendant was not indebted till the plaintiff's body was in

prison upon judgment and execution for a certain sum, and that as the plaintiff could not come in as a creditor for the amount of the judgment under the commission, he could not be barred.

. In page 17, after having very fully gone into the case they conclude with the following words, " Upon the whole, no debt can be barred but what was a debt contracted with certainty before the act of bankruptcy. Did. the defendants owe the plaintiff Chilton £308 10s. and cost before he rendered his body in satisfaction thereof, (which we take to be the same thing as if he had actually paid the debt and cost)? They certainly did not. They had promised to pay the money, to furnish the money to take up the bill and note and to save the plaintiff Chilton harmless; they broke their promise. Chilton was terrified and arrested. There was an injury to a certain degree, but no debt owing by the defendants to Chilton before his body was in execution for the certain sum. How could the plaintiff Chilton at the time of the commission of bankruptcy's issuing, have sworn to a debt before he had advanced a shilling for the defendant? He certainly could not. But now his body being in execution, he has thereby paid the debt; so the *postea* must be delivered to the plaintiff, and he must have judgment." It will be observed that the court say, " there had been an injury to a certain degree " before the bankruptcy. And undoubtedly for this injury an action could have been maintained and a recovery had *pro tanto*.

. In the case of Goddard against Vanderheyden, the reasoning of the court is the same as in the case of Chilton v. Wiffin and Cromwell. In giving their opinion in that case it is thus laid down by them in the 3d of Wilson, 270. " If A has a bond of indemnity from B and the condition be broken, and afterwards B becomes bankrupt before A has been sued or damnified, though A has a good cause of action against B before the act of bankruptcy, yet as A had not been damnified by paying any certain sum of money, by B's breach of the condition, A cannot possibly swear to any debt due and owing

from B at the time of the act of bankruptcy. Suppose a lessee ploughs up meadow ground for which he is bound to pay the lessor a certain sum of money as a penalty, can that penalty be proved as a debt under a commission of bankrupcty? It certainly cannot."

In page 272 they make use of the following expressions, " In assault and battery before bankruptcy, during the bankruptcy the plaintiff has a verdict with damages, but had not judgment till after the certificate; the court was of opinion the plaintiff could not come in under the commission; that it was not a provable debt, or a debt due at the time of the bankruptcy, and quote Walter v. Sherlock, Hil. 23, Geo. 2.

It is very evident that in the last case put as well as in the others, there was really a cause of action existing, for which damages could be recovered before the bankruptcy, and yet when the damages were ascertained by judgment after the bankruptcy, that judgment would be considered as a good debt against the bankrupt notwithstanding his certificate. The cases in 3 Wilson, 346, of Young and Gill v. Hookley and of Paul against Jones in 1 Durn. 599, were decided on the same principle with those of Chilton against Wiffin and Cromwell, and Goddard against Vanderheyden.

Among the more ancient authorities Broughton's case in 5 Co. 24, was relied upon by the defendants in error, but no more was determined in that case than that the obligee in a bond to save harmless might voluntarily pay the debt he was bound and liable to pay and bring his action against the obligor and recover for the money so paid by him as well as if he had been compelled to the payment by a compulsory process.

Nor is the 3 Brown, 502, cited by the counsel for the defendant more in his favor. The point determined in that case was, that an obligee in a bond to save harmless, having paid part of the debt for the obligor before his bankruptcy and a part after (the bond being forfeited at the time of the first payment) might come in as a creditor under the commission for

the whole debt; an inference certainly could not be drawn
from his coming in as a creditor for what he paid before his
bankruptcy, that he had no cause of action, for such sum paid,
at the time of payment. For suppose no sum had been paid by
him but what was paid before the bankruptcy and the
remained of the debt had been paid by another per-
son after the bankruptcy; or suppose the remainder had never
been paid? Would not an action have been sustained imme-
diately on the payment of this sum? Would not his being
obliged to pay it be a damnification? There can be no ques-
tion about it. There is not even a *dictum* but that on the pay-
ment of money an action will lie to recover so much as is in
fact paid.

It is therefore clear from adjudged cases that an action may
be maintained on an obligation covenant or engagement to
save harmless, if a suit be previously brought against the
obligee, etc. by the creditor, whose debt he became surety to
pay; or even if there is an attempt or threatening to bring a
suit so as to affrighten and terrify him. Whether, if the
money be not paid to the creditor by the time stipulated, and
whether, if such obligee or covenantee be barely liable to pay
the debt an action may be maintained by him against the
obligor, is still the question? To this the 3 Bulstrode, 233, is
directly in point, in which the sole question was whether an
action would lie on a mere liability to pay, and it was de-
termined that it would.

So in Salk. 197, it was said by the court, " That where the
counterbond or covenant is given to save harmless from a penal
bond before the condition is broken, then if the penal sum be
not paid at the day, and so the condition not preserved; the
party to be saved harmless does by this become liable to the
penalty, and so is damnified, and the counterbond forfeited."
Though in the same case the court held, where the action was
brought by the covenantee, on a covenant of quiet enjoyment
of lands assigned by a lessee to him and that he should be
clearly discharged, or otherwise indemnified from all arrears of
rent due from the lessee, " that rent remaining in arrear and

not paid, is not a damage unless the plaintiff be sued or charged; and if paid any time before such damage incurred by the plaintiff it is sufficient," not to mention that in Cro. Eliz. 53, which has been before cited the court expressly say, that on a liability to be sued the sheriff may maintain an action.

We think therefore that a liability to be sued or to pay; a liability every moment to be arrested or to have property taken, necessarily carries with it a damnification to the person thus liable to be sued; if the principal debtor, for whom such person was bound be reduced in his circumstances or insolvent, and in such case no express damages need be proved.

It was said by the defendant in error, that the recommendation given by the sheriff in error, was that the defendant was good for fifteen or twenty pounds; but that the credit given him was for £21 10s., and that therefore the plaintiff in error was not holden by the recommendation; to this may be answered, that the largest note being given on a day previous to that on which the other was given, the plaintiff in error would be liable on the recommendation for the £9 at least; but at any rate the defendant in error shall never say that the plaintiff in error was not liable on the recommendation when he concedes, that by means of it, he obtained the credit; and that some months after the recommendation and credit was given he gave the note of indemnity to secure the plaintiff in error against all damages he might be liable to in consequence of this very recommendation.

Upon the whole we are of opinion, that as the plaintiff in error was liable to pay the debt to Cornish and to be arrested and to have his property taken therefor; and as the defendant in error was reduced in his circumstances and insolvent, at the time when the suit was commenced on the note of indemnity, there were sufficient ground of damnification to entitle the plaintiff in error to his action and consequently the judgment of the Superior Court ought to be reversed.