## Case No. 15,445.

### UNITED STATES v. IRWIN.

[5 McLean, 178;[1] 4 Am. Law J. (N. S.) 214; 9 West. Law J. 145.]

Circuit Court, D. Ohio. Oct. Term, 1851.

FORGERY OF "PUBLIC SECURITIES" — MILITARY LAND WARRANTS — CONSTRUCTION OF STATUTES.

1. The 14th section of the act of congress of the 30th of April, 1790 [1 Stat. 115], providing that the forgery of, or the uttering and publishing of, any forged "certificate, indent, or other public security," shall be punished by death, is repealed by the 17th section of the crimes act, of the 3d of March, 1825 [4 Stat. 119], which enumerates as the subjects of forgery, an "indent, certificate of public stock, or debt, or treasury note, or other public security of the United States, or any letters patent," &c., and declares that the punishment, on conviction, shall be fine and imprisonment.

2. A posterior statute, inconsistent with and repugnant to the provisions of a prior one, operates as a repeal of the old statute, without any express words to that effect.

[Cited in U. S. v. Fisher, 109 U. S. 145, 3 Sup. Ct. 156.]

[Cited in State v. Otis, 42 N. H. 73.]

3. A military land warrant is neither an indent nor a public security of the United States, within the meaning of the act of congress of 1825.

4. Words and phrases used in statutes, must be understood in the sense intended by the lawmaker, where that can be ascertained with reasonable certainty.

[Cited in U. S. v. Mattock, Case No. 15,744.]

[Cited in Buffham v. City of Racine, 26 Wis. 453; Cortesy v. Territory N. M., 32 Pac. 506.]

5. If general words in a statute follow an enumeration of particular cases, they are held to apply only to cases of the same kind as those expressly mentioned.

[Cited in Semple v. Bank of British Columbia, Case No. 12,659; U. S. v. Gibson, 47 Fed. 834; U. S. v. Fisher, 109 U. S. 145, 3 Sup. Ct. 156.]

[Cited in Adkison v. Hardwick (Colo. Sup.) 21 Pac. 908; Board of Education v. City of Detroit, 30 Mich. 509; City of St. Louis v. Laughlin, 49 Mo. 560.]

6. The forgery of a land warrant, not being embraced, either expressly or by fair implication, in any act of congress, there is consequently no jurisdiction to punish; and a motion to quash an indictment for such forgery will be sustained.

[This was an indictment by the United States against James Irwin upon the charge of forgery.]

S. Mason, U. S. Dist. Atty.

H. Stanbery and S. W. Andrews, for defendant.

LEAVITT, District Judge. This motion is urged on the ground that the instrument or paper alleged to have been forged, is not embraced, either expressly or by fair construction, in any act of congress, defining and punishing the crime of forgery. If this position is sustainable, it is quite clear this motion must prevail. This court has no common law jurisdiction of crimes, and therefore no power to adjudge any act criminal,

[1] [Reported by Hon. John McLean, Circuit Justice.]

not declared to be so, by statutory enactment.

This indictment contains four counts. The first charges the forgery of a military land warrant, averring it to be "a public security of the United States." The second charges the forgery of such warrant, with the averment, that it is "a certificate of a right to locate one hundred and sixty acres of the lands of the United States." The third and fourth counts charge the uttering and publishing of the instrument, as described respectively in the first and second counts.

It is insisted, in the first place, in opposition to the motion, that the charges set forth in the several counts of the indictment, are within the provisions of the 14th section of the act of congress of the 30th of April, 1790 (1 Stat. 115). This section provides for, and punishes the forgery of any "certificate, indent, or other public security," or the uttering and publishing any such forged instrument; and affixes to any of these crimes, the penalty of death. There can be no doubt, that if this section is now in force, the forgery alleged in the indictment, and the uttering and publishing the forged instrument set forth, are within its terms. The term certificate, as used in that section, is sufficiently comprehensive to embrace the land warrant described in the several counts. This instrument is substantially a certificate, emanating from the proper officer of the government, setting forth that the person named therein, is entitled, on the ground of military service, to locate one hundred and sixty acres of the lands of the United States, subject to entry at private sale.

But it is contended that the section referred to, is impliedly repealed by the 17th section of the crimes act of the 3d of March, 1825 (4 Stat. 119). And this presents the first question for the decision of the court in the consideration of the pending motion. The act of 1825 contains no clause, expressly repealing any part of the act of 1790. There is a provision in the 26th section of the former act, to the effect that all prior laws inconsistent with its enactments, are repealed. This, however, is only declaratory of the principle long since settled, that a posterior statute inconsistent with, and repugnant to, the provisions of a prior one, operates as a virtual repeal of the old law. The only inquiry arising here, is whether, under the operation of this rule, the 14th section of the act of 1790 is abrogated or superseded by the act of 1825. By the terms of the 14th section of the old law, the instruments or papers of which forgery may be committed are, a "certificate, indent. or other public security." By the 17th section of the later act, the specification is extended, and embraces any "indent, certificate of public stock. or debt, treasury note, or other public security of the United States. issued or granted by the president of the United States, or any bill, check, draft for money," &c.

A comparison of these two sections seems to warrant the conclusion, that it was the intention of congress, in the enactment of the latter, to repeal the former. There are several considerations clearly sustaining this inference. In the first place, it may be noticed, that the act of 1825 contains in its enumeration of instruments of which forgery may be predicated, the term "indent," precisely as used in the act of 1790, and without the semblance of reason that it was intended to be understood in any different sense. Now, if it was the intention of the law-making power, in the passage of the act of 1825, merely to add to, and enlarge the specifications of the old law, with the design that both should co-exist, it is not easy to perceive why the term "indent" should have been inserted in the last law. There is certainly no foundation for the inference, that congress intended the forgery of this instrument should be punishable under two different statutes, in force at the same time. The same remarks apply, with equal force, in relation to the terms, "other public security." These words occur in the act of 1790, and are also found in that of 1825. It is clear, too, that the use of the term "certificate," as it appears in the two acts, is pregnant with meaning as to the intention of congress in the later enactment. In the old law, the word is used in its most unlimited sense, and fairly embraces any instrument which, by the most liberal interpretation, could be called a certificate. In the act of 1825, the same term is used, but with additions deemed necessary to the clearness and precision demanded in all statutes defining and punishing crimes. Unlike the term "indent," which had a specific meaning, and could extend only to a single instrument known to the government, the term "certificate" would include a numerous class of public papers; and its use. without any restrictive additions, would leave an almost unlimited scope for judicial construction. It was, doubtless, from considerations of this kind, that congress, in the act of 1825, carefully restricted the term to a "certificate of the public stock or debt;" intending by. the very full specification which follows of the instruments which were to be the subjects of forgery, to embrace all for which provision was deemed necessary.

There is still another consideration, showing very conclusively, the intention of the legislature to supersede the section of the act of 1790, referred to, and that the two sections under review cannot stand together. By the section of the former law, under which, it is argued, this indictment may be sustained, the penalty, on conviction of the crime of forgery, is death. By the act of 1825, the milder punishment of fine and imprisonment is substituted. While it is conceded that the latter statute abrogates the death penalty provided for by the old law, it is insisted that this change does not operate

as a repeal of that part of the section which defines the crime. It is doubtless a common exercise of legislative power and discretion, to increase or lessen the punishment of a crime provided for, and defined by a previous statute. But, where that object alone is contemplated, it is usual to provide simply for such a change of penalty, without any attempt to change or interfere with the body of the statute. And this is effected by a clear and intelligible declaration of the purpose of the legislature, which leaves no doubt as to the object intended. In the case now under consideration, we find the provisions of the former law materially changed in other respects than the change of penalty. All the instruments, the forgery of which is punished by the old law, are enumerated in the new, with many additions. This fact, in connection with the change in the penalty, points clearly to the conclusion, that the act of 1825 was designed as a full substitution for that of 1790, and by fair implication, repeals it.

It is claimed, however, in the argument, that if the act of 1790 is not in force, the forgery charged in the indictment is punishable under the act of 1825. To the examination of this point, the attention of the court will now be directed. The substance and character of the instrument alleged to have been forged, have been already noticed. It is, in brief, a certificate that the person named in it, is entitled to locate 160 acres of the public lands. Is this instrument within the terms and scope of the act of 1825, defining and punishing the crime of forgery? The enumeration of instruments, the forgery of which is provided for by that law, and within which, it is argued, a land warrant may be included, embraces an indent, certificate of public stock or debt, treasury note, or other public security, &c. Is a land warrant an indent? It is insisted in the argument, that this term, in its general and comprehensive sense, signifies any contract or obligation in writing, and that a land warrant may, by fair construction, be embraced within its scope. It is true, the word "indent" is used by English lexicographers, in the sense contended for; but it is clear, it was not used in that sense, either in the act of 1790 or 1825. Referring to Webster's Dictionary—certainly the highest authority on questions of this kind—we have an intelligible clue to the meaning of the word, as used and understood in this country, by our statesmen and legislators. It is defined to be a certificate issued by the government, at the close of the Revolutionary war, to the public creditors. It is clear, a land warrant is not within this definition. And recognizing the soundness of the rule, that terms and phrases employed in statutes must be understood in the sense intended by the law-maker, where that can be ascertained with reasonable certainty, the conclusion follows, that the instrument set out in this indictment is not an indent.

But it is strenuously urged, that a land warrant is included in the more comprehensive language of the statute, namely, "other public security of the United States." In one sense, doubtless, any paper emanating from the government, creating on its part an obligation to perform an act, and a corresponding right in behalf of an individual, may be regarded as a "public security." But, in the opinion of the court, it would be in violation of every safe principle of construction, to give to it this far-reaching import. The term, "public security," as used in the legislation of congress, and in its popular acceptation, has a fixed and determinate meaning. It is simply a certificate, or instrument issued by the proper officer, under the authority of law, evidencing the pecuniary indebtment or liability of the government to the holder. Standing by itself, and without any light thrown upon it by its collocation, and association with other terms used, this must be viewed as the utmost extent of its signification; especially, when occurring in a penal statute requiring, by a long sanctioned principle, great strictness of construction.

If, however, there was room to doubt the correctness of this conclusion, the sense in which these terms were intended to be used, in the statute under consideration, is quite obvious from their connection with those immediately preceding them. A class of instruments, the forgery of which is made punishable, all referring exclusively to evidence of pecuniary indebtment, or obligation, are grouped together, followed by the comprehensive words, "or other public security." The words which immediately precede these, are, an "indent, certificate of public stock, or debt, or treasury note." Now it is a well settled rule of construction, that "where general words follow an enumeration of particular cases, such general words are held to apply only to cases of the same kind as those which are expressly mentioned." Smith's Com. § 740. It would certainly violate the rule, to give to the words "public security" a meaning so expansive as to embrace anything not kindred to the instruments immediately preceding them, in reference to which those words are comprehensively used. And that they were intended in this restrictive sense, and not as general words, covering any possible omissions in the specifications contained in the whole section, is obvious from the fact, that they are followed by an enumeration of many other instruments, the forgery of which is provided for. In any other view of this section, the object of the legislature in setting forth, with such studied particularity, what were intended to be subjects of forgery, would be wholly defeated, and a boundless field opened for judicial construction.

Upon the whole, the court is led satisfactorily to the conclusion. that. in reference to the paper described in the indictment, there is an omission in the legislation of congress,

which cannot be supplied by any just exercise of judicial discretion. If the law does not declare the forgery of a land warrant to be a crime, this court cannot hold it to be so. It possesses no legislative power; and the exercise of such a power, under the name of judicial construction, would be nothing less than usurpation. It is required by the theory of our government, and is essential to the preservation of the rights of the citizen, that the apportionment of power to the co-ordinate branches named in the constitution, should be rigidly observed in each. And it is better that crime should go sometimes unpunished, than that this cardinal principle should be violated.

The pending motion is not based on any technical exception to the frame and structure of the indictment. In such cases, courts reluctantly exercise the power of quashing an indictment, and will not do so, unless the defects alleged are palpable, and cannot be remedied by a liberal and enlightened application of acknowledged principles of law. But the present motion goes to the jurisdiction of this court. And as there is a defect of power to punish in the event of a trial and conviction, its plain duty is, in this incipient stage of the proceeding, to quash the indictment, and thus relieve the accused party, however guilty in fact, from the jeopardy in which he is placed.