BUFFHAM vs. CITY OF RACINE, Garnishee.

*Garnishment.—Municipal corporation.*

A municipal corporation is not subject to garnishment. Ch. 200, Laws of 1864, has not changed the law on this subject, as settled in *Burnham v. Fond du Lac,* 15 Wis. 193.

DIXON, C. J., dissents, holding that the language of the statute is plain, and that the court cannot depart from the plain meaning of a statute on the ground of public or private inconvenience or policy.

APPEAL from the Circuit Court for *Racine* County. In an action by *Buffham* against one Cover, proceedings in garnishment were had against the defendant city; and after plaintiff had recovered a judgment against Cover, he moved for judgment against the city as garnishee; but the court denied the motion, on the ground that a municipal corporation in this state is not liable to garnishment. From this decision the plaintiff appealed.

*George B. Judd,* for appellant:

1. The city may sue and be sued by its corporate name. R. S. ch. 78, sec. 1; Charter of Racine, Pr. & L. Laws of 1866, ch. 208, title 1, sec. 3; 7 Wis. 484–489. A garnishee proceeding is an action. 14 Wis. 22; 16 id. 173. 2. The action in 15 Wis. 193, was founded upon a garnishee proceeding, prosecuted under R. S., ch. 130, sec. 34, which did not expressly authorize garnishee proceedings against *corporations.* See also sec. 46 of that chapter. That case is not an authority therefore, except in such cases as may have been instituted under said secs. 34 and 46. 3. This action was instituted under ch. 200, Laws of 1864, which expressly authorizes such a proceeding (in actions founded upon contract) against any *corporation* indebted upon contract to the original defendant. City corporations were the first formed and known to the law, and of course are the first to be reached by the terms

of this statute.    Jacob's Law Dic. Title " Corpora-
tion ;" 1 Blacks. Com. 467, 469, 472, 473, 475.    The
language of the statute is plain and unambiguous, and
interpretation by the courts not allowable.  9 Wis. 52 ;
20 Wend. 561, 562.

*C. E. Dyer,* city attorney, for the respondent, cited
*Burnham v. Fond du Lac,* 15 Wis. 193, and argued that
the reasons assigned for that decision were all appli-
cable with the same force to the present case, notwith-
standing the passage of ch. 200, Laws of 1864.    He
also cited *Hill v. R. R. Co.,* 14 Wis. 291; *Hawthorn v.
St. Louis,* 11 Mo. 59; *Fortune v. St. Louis,* 23 id. 239 ;
*Mayor, etc., of Mobile v. Rowland,* 26 Ala. 498 ; *Mayor,
etc., of Baltimore v. Root,* 8 Md. 95 ; *City of Erie v. Knapp,*
29 Pa. St. 173.

COLE, J.    In the case of *Burnham v. The City of Fond
du Lac,* 15 Wis. 193, it was held that a municipal cor-
poration was not subject to the process of garnishment.
The reasons for that decision are there given ; and they
still seem to us sufficiently cogent and weighty to
sustain the principle there laid down.    The public
inconvenience which would necessarily result from
holding a municipal corporation liable to be garnished,
and thus drawing it into controversies between indi-
viduals in which it has no concern, more than coun-
terbalances any advantages derived from the opposite
rule of subjecting it to that liability.    That decision,
then, disposes of this case, unless chap. 200, Laws of
1864, has changed the law upon this subject ; and we do
not think it has.    The manifest object of this statute
is to authorize a garnishee proceeding in an action
founded upon contract, where the plaintiff, at any time
before judgment, makes affidavit that any person or
corporation is indebted to the defendant in the action,
and that the affiant has reason to believe, and does
believe, that the party defendant has not property
liable to execution sufficient to satisfy his demand.

But it was not intended to extend the garnishee proceeding to a municipal corporation, or authorize it against any corporation not included in section 46, chap. 130, R. S. It is true that the language of the statute gives the remedy against " *any person or persons, corporation or corporations* "—words of very general import; but still we think it must have some limitation. It was not intended to have any more extended meaning than the language used in section 46, above referred to.

DIXON, C. J. The authorities are numerous and the rules well settled which, in my judgment, clearly demonstrate the error of the majority of the court in the decision of this and the two former cases (*Hill v. La Crosse & Mil. R. R. Co.*, 14 Wis. 291, and *Burnham v. The City of Fond du Lac*, 15 Wis. 193), involving the same question; and as I did not state the grounds of my dissent in those cases, I propose to do so in this. Dissenting, as I feel compelled to, for the third time, it seems most proper that my reasons should be given.

The language of the statute now under consideration does not materially differ from that then considered. If there be any difference, it more strongly favors the liability of the corporation to garnishment. The statute then read: " A corporation may be summoned as garnishee by service of notice to appear," etc. R. S. ch. 130, sec. 46. It now reads: " *Any* person or persons, corporation or corporations." Laws of 1864, ch. 200, sec. 1. It may be said that the introduction of the word " any " in the latter statute makes it more general. I think both equally comprehensive, and, by the plain and undoubted meaning of the words, to include every corporation, whether municipal or of some other kind. In *Putnam v. Langley*, 11 Pick. 487, the court had under consideration a statute which provided that where a person charged in execution desired to take the poor debtor's oath, in order to obtain his

liberation from imprisonment, the keeper of the prison should apply to a justice, and a notice ".should be served on the creditor or creditors, if he, she, or they were within the commonwealth." The court held, that notice must be served on *all* the creditors. So I think here, when the legislature say " *a* corporation," they plainly mean *any* corporation or *all* corporations within the reach of process. The language is most general and comprehensive, pointing to no particular class or kind of corporations, but plainly and unequivocally includes all; and where such is the plain letter of the statute, I deny the authority of this court or of any other to introduce exceptions, or to impose limitations or restraints where the legislature have introduced or imposed none. And especially do I deny the authority of. the courts thus to wrest the language of a statute, depriving it of its plain, legal and grammatical force and effect, upon grounds of mere policy or convenience, which are the only grounds upon which this and the former decisions are placed. Upon this point the language of the court in the case above cited, in the opinion delivered by Chief Justice SHAW, is to the purpose, and I quote it now. The court say: " It is said that this construction " (that is, the construction which required service upon *all* creditors) " will be attended with great inconvenience, especially where the creditors are numerous, and could not have been intended by the legislature. The argument from inconvenience may have considerable weight upon a question of construction, where the language is doubtful. It is not to be presumed, upon doubtful language, that the legislature intended to establish a rule of action which would be attended with inconvenience. *But where the language is clear, and where, of course, the intent is manifest, the court is not at liberty to be governed by considerations of inconvenience.*"

It being conceded that the words of the statute are

general, or, as my brethren correctly express it, " of
very general import," the first cardinal and well set-
tled rule which I notice as being clearly violated by
their decision, is, that general words must receive a
general construction, unless there be something in the
statute expressly limiting or restraining them.   The
rule is thus stated by Chancellor KENT, in *Demarest v.
Wynkoop*, 3 Johns. Ch. R. 142 :  " General words must
receive a general construction ; and if there be no
express exception, the court can create none."   The
learned chancellor cites *Stowel v. Zouch*, Plowd. 369, *b*,
·371, *b* ; *Dupleix v. De Roven*, 2 Vern. 540 ; *Beckford v.
Wade*, 17 Ves. 87 ; *Buckinghamshire v. Drury*, Wilmot's
Opinions, 177, s. 194 ; *Hall v. Wybourn*, 2 Salk. 420 ;
and *Aubry v. Fortescue*, 10 Mod. 206—which fully sus-
tain the rule, and to which I add the following: *Tor-
rance v. McDougald*, 12 Ga. 530 ; *Collins v. Carman*, 5
Md. 505 ; and *Woodbury v. Shackleford*, 19 Wis. 55.

Another rule, most clearly forbidding the construc-
tion given, is that it is not permitted to interpret that
which has no need of interpretation.   When an act is
expressed in clear and precise terms ; when the sense
is manifest and leads to nothing absurd—there can be
no reason not to adopt the sense it naturally presents.
To go elsewhere in search of conjectures, in order to
restrain or extinguish it, is to elude it.   This is Vat-
tel's first general maxim of interpretation, which has
been adopted and often acted upon by the courts of
common law.   Potter's Dwarris, 126, 143 ; *President,
etc., v. The People*, 9 Barb. 170 ; *Jackson v. Lewis*, 17
Johns. 475 ;  *United States v. Fisher*, 2 Cranch, 358 ;
*People v. Railway Co.*, 13 N. Y. 78.

Again, the best rule by which to arrive at the
meaning and intention of a law, is to abide by the
words which the law-maker has used.   *United States v.
Bright*, Bright's Trial, 188 ; *S. C.* Bright 9 ; *United
States v. Warner*, 4 McLean, 463 ; *United States v. Irwin*,
5 McLean, 178 ; *Beatty's Ex'r v. United States*, Dever-

eux's Court of Claims R. 157; *Nicholson v. United States,* id. 158.

It is only in cases where the meaning of a statute is doubtful, that courts are authorized to indulge in conjectures as to the intention of the legislature, or to look to consequences in the construction of the law. Where the meaning is plain and unambiguous, the act must be carried into effect according to its language, or the courts would be assuming legislative authority; and it is not for the court to say as to such clear language, that it embraces cases not described, or does not embrace those which are, merely because no reason° is perceived why the former were not included, or because it may seem to the court that the latter should not have been. *Ogden v. Strong,* 2 Paine C. C. 584; *Scott v. Reid,* 2 Peters, 524; Potter's Dwarris, 183.

While it is the duty of courts, in construing statutes, to give effect to the intent of the law-making power, and to seek for that intent in every legitimate way, yet it is to be sought first of all in the words and language employed, and if the words are free from ambiguity, and express clearly the sense of the framers, there is no occasion to resort to other means of interpretation. Potter's Dwarris, 193, note 12; *Purdy v. The People,* 4 Hill, 397, 403; *McClusky v. Cromwell,* 11 N. Y. 601, 604; *Waller v. Harris,* 20 Wend. 561, 562; Story on the Const., § 392. " The current of authority at the present day," says BRONSON, J., in *Waller v. Harris,* " is in favor of reading statutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation. Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions, without the danger of doing vastly more mischief than good." And in *Macdougall v. Paterson,* 11 C. B. 769 [73 E. C. L. 769], Chief Justice JERVIS says:

Buffham vs. City of Racine, garnishee.

" We consider ourselves bound to adhere to the ordinary meaning of the words used, and to their grammatical construction, unless that is at variance with the intention to be collected from the statute itself, or leads to some manifest absurdity or repugnance." See also, *Jones v. Harrison*, 6 Exch. 328, 333 ; and Sedgwick on Statutory Law, 260.

" If the words of a statute are plain, they must be strictly followed; but if they are ambiguous, the whole context must be looked to for their explanation." Per Lord ABINGER, Potter's Dwarris, 196.

" We disclaim altogether the assumption of any right to assign different meanings to the same words in an act of parliament, on the ground of a supposed general intention of the act. We think it necessary to give a fair and reasonable construction to the language used by the legislature ; *but we are not to assume the unwarrantable liberty of varying that construction for the purpose of making the act consistent with any views of our own.*" Per Lord DENMAN, in *Regina v. Commissioners of Poor Laws, Holborn Union*, Potter's Dwarris, 195.

" Every day," says PATTESON, J., in *King v. Burrell*, 12 A. & E. 468, " I see the necessity of not importing into statutes words which are not found there. Such a mode of interpretation only gives occasion to endless difficulties."

" We are required," said Lord DENMAN, in *Lamond v. Eiffe*, 3 Q. B. Rep. 910, " to add some arbitrary words to the section, which would exclude us from acting in certain cases. We cannot introduce any such qualifications; and I cannot help thinking that the introduction of qualifying words in the interpretation of statutes is frequently a great reproach to our law. None of the distinctions suggested are contained in the plain words of the act; and we cannot qualify them by any arbitrary introductions." And so TINDAL, C. J., said in *Everett v. Wells*, 2 Scott's N. R. 531 : " That would, in effect, be *importing into the act a*

*condition which we do not find there.* It is the duty, how-
ever, of all courts to confine themselves to the words
of the legislature, *nothing adding thereto, nothing dimin-
ishing.*"

"Lord TENDERDEN's words have been before quoted,
that 'there is always danger in giving effect to what
is called the equity of a statute; it is much safer and
better to rely on and abide by the plain words,
although the legislature might have provided for other
cases, had their attention been directed to them.' The
legislature, as was once well observed by Mr. Justice
HEATH, 'is always at hand,' to supply deficiences, or
correct mistakes." Dwarris on Statutes, 721; Law
Lib., vol. 7.

"Where the legislature has used words of a plain
and definite import, it would be very dangerous to put
upon them a construction which would amount to
holding that the legislature did not mean what it has
expressed. The fittest course in all cases where the
intention of the legislature is brought into question, is
to adhere to the words of the statute, construing them
according to their natural import, in the order in which
they stand in the act of parliament. The most en-
lightened and experienced judges have for some time
lamented the too frequent departure from the plain
and obvious meaning of the words of the act of par-
liament by which a case is governed, and themselves
hold it much the safer course to adhere to the words
of the statute construed in their ordinary import, than
to enter into any inquiry as to the supposed intention
of the parties who framed the act. They are not (as
the most learned members of a learned body best
know) to *presume* the intentions of the legislature, but
to *collect them* from the words of the act of parliament;
*and they have nothing to do with the policy of the law.* This
is the true sense in which it is so often impressively
repeated, that judges are not to construe statutes by
equity, or *views of policy,* but to collect the sense of

the legislature by a sound interpretation of the language, according to reason and grammatical correctness." Potter's Dwarris, 204, and authorities cited.

" The fundamental reason," says Mr. Sedgwick, " of the rules, in regard to the language of statutes, which we have thus stated, is to be found in the consideration that unless the courts, as a general thing, construe language in the same sense in which it was used by the legislature, that is, *according to its ordinary and natural import*, it would be in vain to attempt to preserve any harmony between these two great co-ordinate branches of government; and the contrary doctrine would open the door to intolerable looseness of construction. If courts could give to phrases new, unusual, forced or strained interpretations ; if they could insert a word here or strike out a word there, all idea of conforming to the legislative intent would be lost, and cases turning on the construction of doubtful statutes would soon come to be decided either on judicial notions of policy, or on the peculiar equities of the particular matter in hand." Sedg. on Stat. & Const. Law, 261.

" The rule by which we are to be guided," says PARKE, B., in *Perry v. Skinner*, 2 M. & W. 471, " is to look to the precise words and construe them in their ordinary sense, unless it should lead to any absurdity or manifest injustice ; and if it should, so to vary and modify them as to avoid that which certainly could not have been the intention of the legislature."

In modern statutes, " the legislature is careful to express all it intends in so many words, that to go beyond their necessary implication is to make, and not to interpret law." COLERIDGE, J., in *Gwynn v. Burnell*, 1 Scott N. R. 739. And in *Regina v. Rose*, 6 Q. B. 157, the same learned judge said: " In a modern act, and one so full of words as this, the literal construction is the safe one."

" Our decision," says Lord TENTERDEN, C. J., in *The*
Wis. xxvi—58

*King v. Barham*, 8 B. & C. 104, " may, perhaps, in this particular case, operate to defeat the object of the statute ; but it is better to abide by this consequence, than to put upon it a construction not warranted by the words of the act, in order to give effect to what we may suppose to have been the intention of the legislature." And in *Notley v. Buck*, 8 B. & C. 164, the same judge said : " The words may probably go beyond the intention, but if they do, it rests with the legislature to make an alteration ; the duty of the court is only to construe and give effect to the provisions."

Such is the clear and emphatic language of some of the authorities, the number of which might, as will be seen by examining any standard elementary writer, be greatly increased if it were deemed necessary or proper to do so ; and such are some of the rules of statutory construction, which, in my judgment, are plainly contravened and disregarded by the decisions in this and the former cases.

But since the decisions, as will be observed from the opinions in each of the cases, proceed upon the ground of the supposed " public inconvenience " which would result from giving effect to the statute according to the natural and most obvious import of its words, or upon certain grounds of policy, which my brethren think ought to prevail in such cases, I desire most especially to protest against these as constituting any valid or sufficient reasons for a judicial tribunal to override the plain letter of a statute ; and in doing so I shall, as far as possible, and as I have already done, adopt the language of others as more aptly and carefully chosen, and most entitled to attention and respect. In the present case, for example, we find the court arguing thus : " The public inconvenience which would necessarily result from holding a municipal corporation liable to be garnished, and thus drawing it into controversies between individuals in which it had no

concern, more than counterbalances any advantage derived from the opposite rule of subjecting it to that liability." Now, I protest against this mode of reasoning against the plain language and declaration of a statute, and I deny the power of the court thus to unmake the law. I deny the authority of any court so to mould or change the plain language of a statute, or to introduce exceptions to suit its own notions, either of policy or of public or private convenience; and protest against it as a most unwarranted usurpation of legislative powers. I deny the authority of the court, for reasons like these, to change, modify or disregard the ordinary and obvious meaning of words, or to declare, when the statute says *any* corporation, that the legislature did not so intend, or that it intended only *some* corporations; or to introduce an exception, and say the statute must be read, "*any* corporation *except a municipal corporation*," or whatever other corporation the court, in the exercise of this arbitrary and undefined power of repeal or amendment, may say ought to be excepted, or that the legislature intended to except. That this mode of interpretation, and upon such grounds, is wholly unauthorized, appears from the quotations already made, and particularly from the language of Chief Justice SHAW, first above given. It is, as Mr. SEDGWICK correctly observes, "not obedience to legislative commands; it is not an effort to arrive at the legislative intention; it is not construction of a doubtful provision; it is a violation of the words of the statute, in order to make a rule according to the judicial notion of right. It is purely and strictly judicial legislation." Sedg. on Stat. & Const. Law, 307.

The case where a court may be justified in disregarding a plain provision of statute, and therefore, the true rule of law, is nowhere more correctly stated than by Judge STORY, in the introductory remarks to his work on the Conflict of Laws, p. 10. He says:

"Where words conflict with each other; where the different clauses of an act bear upon each other, and would be inconsistent, unless the natural and common import of words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable.   But if, in any case, the plain meaning of a provision, not contradicted by any other provisions in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, *it must be one where the absurdity and injustice of applying the provision to the case would be so monstrous, that all mankind would, without hesi'ation, unite in rejecting the application,*"

It is not, and cannot be, pretended that the present case, nor those upon which my brethren rely (for they all proceed upon the same grounds), come at all within the rule thus laid down by the most distinguished and learned of modern jurists.   "Policy," says Mr. Justice TAUNTON, "is a very questionable and unsatisfactory ground; because men's minds differ much on the nature and extent of public policy."   *Rex v. The Inhabitants of St. Gregory,* 2 A. & E. 99.   Just so it may be said of public inconvenience.   Men's minds differ much about that.   I differ entirely from my brethren, and cannot see the public inconvenience of which they speak; and so have the courts of three or four of the states differed from them.   *Whidden v. Drake,* 5 N. H. 13 ; *Bray v. Wallingford,* 20 Conn. 416 ; *Wales v. Muscatine,* 4 Iowa, 302 ; 12 Gratt. 655.   This demonstrates the fallacy and unsoundness of the rule which would make the same language of the statute signify one thing in one court, and another thing in another, according to the notions of public inconvenience entertained by the different judges.   We have in this state two great railway corporations, each with its hundreds of miles of road in operation, and its great number of servants and employees, and vast business connections throughout the length and breadth of the state.   It

will undoubtedly be admitted that the inconvenience resulting to these corporations from liability to garnishment is ten-fold, nay, fifty-fold greater than that which can arise to any of our municipal corporations from the same cause. If municipal corporations can be thus judicially excepted from the operation of the statute on the ground of inconvenience, then why not these? There is certainly the same reason, and even much stronger and better; and if I thought the court possessed such arbitrary power of exception or amendment, and must exercise it according to its discretion, then, I must confess, I do not see how it could be refused in favor of one of these railway companies. It is no doubt true that much trouble and inconvenience often results to many persons and corporations from this liability to garnishment, and being thus involved in the controversies and litigation of others; but these are matters for the legislature to consider—for them to balance and weigh the advantages and disadvantages, and not for this court. The legislature have done so, and have declared in plain and intelligible words, that *any* person or corporation indebted to, or having money or effects in his or its possession or control belonging to, a debtor, may be summoned at the suit of the creditor, and the indebtedness, money or effects seized and held for the use of such creditor. Whether in this the legislature have acted wisely or not, is not a question to be canvassed or considered by the court, in opposition to the plain language of the statute. I, for one, think they have acted most wisely and judiciously; but if I thought otherwise, it would not vary the construction to be put upon the statute.

Again, says Judge STORY, (Conflict of Laws, 17): "Arguments drawn from impolicy or inconvenience ought to have little weight. The only sound principle is to declare *ita lex scripta est*, to follow and to obey. Nor, if a principle so just could be overlooked, could there well be found a more unsafe guide in

practice, *than mere policy and inconvenience.* Men, on such subjects, complexionally differ from each other; the same men differ from themselves at different times. The policy of one age may ill suit the wishes or the policy of another. The law is not subject to such fluctuations."

"We have been strongly pressed," says Lord ABINGER, in *Hall v. Franklin,* 3 M. & W, 275, "with the *inconveniences* that may result from the construction of the statute. We are not insensible to them; but the only proper effect of that argument is to make the court cautious in forming its judgment; we cannot, on that account, put a forced construction on the act of parliament."

"The court," said COLERIDGE, J., 6 A. & E. 7, (Potter's Dwarris, 202), "will not attempt to mould the language of an act for the sake of an *apparent convenience,* without the clearest evidence of a corresponding intention in the legislature.   *   *   *   If I thought the construction we are adopting put any force on the meaning of the act, I should be the last to concur in it; for the longer I sit here, the more I feel the importance of seeking only the meaning of a statute according to a fair interpretation of the words, and acting on that." And again he said: "It is, in my opinion, so important for the court, in construing modern statutes, to act upon the principle of giving full effect to their language, and of declining to mould that language, in order to meet either an alleged *convenience* or an alleged equity, upon doubtful evidence of intention, that nothing could induce me to withdraw a case from the operation of a section, which is within its words, but clear and unambiguous evidence that so to do is to fulfil the general intent of the statute, and also that to adhere to the literal interpretation is to decide inconsistently with other and overruling provisions of the same statute."

"I cannot tell," says PATTESON, J., in *The Queen v.*

*Justices of Lancashire,* 11 A. & E. 157, "what conse-
quences may result from the construction which we
must put upon the statute; but if mischievous, they
must be remedied by the legislature." And in *Rhodes
v. Smithurst,* 4 M. & W. 63, Lord ABINGER said: "A
court of law ought not to be influenced or governed
by any notions of hardship; cases may require legis-
lative interference, but judges cannot modify the rules
of law."

"Hardship can only be urged before us when we
are construing doubtful language, to assist us in getting
at the real intention of the legislature. Here we think
the language imposing the liability is not doubtful."
Per Lord CAMPBELL, C. J., in *Moss v. Commissioners of
Sewers,* 4 Ellis & Black. 670, 679.

"The decisive answer is, that the legislature has
made no such exception." Chief Justice SHAW, in
*Commonwealth v. Kimball,* 24 Pick. 370.

"It would be going too far to make exceptions which
the legislature has not made." Chief Justice MARSHALL,
in *M'Iver v. Ragan,* 2 Wheat. 29.

"The ground of *public policy* is a very unsafe one;
it is best to adhere to the words used in the act of
parliament." WILLIAMS, J., in *Rex v. The Inhabitants
of St. Gregory, supra.*

"*Inconvenience* can have weight in the construction
of a statute but in doubtful cases." Per PARSONS, C.
J., *Gore v. Brazier,* 3 Mass. 523, 539.

Speaking of the loose and uncertain rules some-
times acted upon by the early British judges, the
circuit court of the United States say: "Of those
rules of construction, none can be more dangerous
than that which, distinguishing between the intent
and the words of the legislature, declares that a
case not within the meaning of a statute, according
to the opinion of the judges, shall not be embraced
within the operation of the statute, although it is
clearly within the words; or, *vice versa,* that a case

within the meaning, though not within the words, shall be embraced. * * I shall always deem it a duty to defer to the expressions of the legislature, to the letter of the statute, when free from ambiguity and doubt, without indulging a speculation, either upon the impolicy or the hardship of the law." *Priestman v. The United States*, 4 Dallas, 30 n. (1), CHASE, J.

After reviewing some of the cases in which statutes have been construed against their letter, Mr. SEDGWICK well remarks: "A review of the decisions which we have thus grouped together, can hardly fail to bring to the lips of the student the motto of this volume: '*Great is the mystery of judicial interpretation.*' Here we find cases in numbers, and the numbers might be easily increased, where laws have been construed, not merely without regard to the language used by the legislator, but in defiance of his expressed will. Qualifications are inserted, exceptions are made and omitted, cases provided for, and the statute is, in truth, remolded by the mere exercise of the judicial authority. It is vain to seek for any principle by which these decisions can be supported, unless it be one which would place all legislation in the power of the judiciary. They are indeed all condemned by the terse and expressive maxims, *divinatio est, non interpretatio, quae omnino recedit a litera.* * * * * * It is, too, to be observed that these are not cases of contradiction or ambiguity. The words of the statute are perfectly plain and intelligible. There is no propriety in calling the process construction or interpretation. It consists in inserting a clause to provide for a class of cases which the court thinks ought, as a matter of justice, to be excepted out of the statute. Nor is there any ground for asserting, that if the subject had been called to the attention of the legislator, he would have made the exception. On the contrary, it is utterly impossible to say that the legislature did not intend to do precisely what it has

done, viz., to establish a sweeping and universal rule, which, it is true, may act hardly in some cases." Statutory and Constitutional Law, 305–307.

There is another rule which is fundamental and almost invariable, running through all cases of this nature, and which I would not omit. The statute is a remedial one, and should be liberally construed in favor of the remedy. "A remedial act shall be so construed as most effectually to meet the beneficial end in view, and to prevent a failure of the remedy. As a general rule, a remedial statute ought to be liberally construed." Dwarris, p. 718. Instead of impeding or limiting the beneficial remedy given by the statute, the utmost freedom and effect should be given to it, consistent with the fair meaning of the words.

I am compelled, therefore, upon what I esteem the wisest and best authority, and for reasons which seem to me sound and unanswerable, to differ from my brethren in this case, as I did in the former ones, and to hold that the process lies against the city of Racine, and that the order of the court below should be reversed.

*By the Court.*—The order of the circuit court is affirmed.