# Wheeling.

## BROWN *v.* GATES, TREASURER &c.

Decided May 10, 1879.

1. A writ of *fieri facias* may issue under provisions of the Code of 1868 of this State against a political public municipal corporation upon a judgment for a debt or damages rendered by a court of competent jurisdiction in this State.

2. But by implication the taxes and public revenues of such corporation are exempt from the operation of the provisions of the 5th section of chapter 140 of said Code, and the 2d and 10th sections of chapter 141 of said Code; and such taxes and revenues cannot be seized or subjected to a writ of *fieri facias* in the hands of the tax-payers or in the treasury of such municipal corporation or in transit to such treasury, by virtue of said writ or by reason of any lien of such *fieri facias* under the said 5th section of said chapter 140, or the said 2d or 10th sections of said chapter 141. Especially should such exemption be held to exist in the absence of an express declaration of law to the contrary.

3. It seems that such a corporation may sometimes own some descriptions of property strictly private or interests in such property, or have debts of a strictly private nature due to it, which are subject to levy and to the lien of such writ of *fieri facias*. But perhaps property charged with public trusts, or owned or used by such corporation for public purposes, such as fire-engines &c. are not subject to levy, or to the lien of a *fieri facias*, upon the same principle that the taxes and revenues of such corporation are not subject to the levy or lien of a *fieri facias*; but as that question is not involved in this case, it is not now decided.

4. Statutes are sometimes extended to cases not within the letter of them; and cases are sometimes excluded from the operation of statutes, though within the letter; on the principle that what is within the intention of the makers of the statute is within the

1879
Special Term.

statute, though not within the letter; and that what is not within the intention of the makers is not within the statute; it being an acknowledged rule in the construction of statutes, that the intention of the makers ought to be regarded.

Writ of error and *supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the 27th day of June, 1878, in an action in said court then pending, wherein James F. Brown was plaintiff and A. P. Gates, treasurer &c, was defendant, allowed upon the petition of said Brown.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the Court.

*W. A. McCorkle* and *J. H. Brown*, for plaintiff in error, cited the following authorities:

Code ch. 140, §1 ; 1 Rev. Code of Va. 473 ; 1 Minor Inst. 41 ; 2 Va. Cas. 143 ; 11 Gratt. 242 ; 21 Gratt, 695 ; Code ch. 52 ; *Id.* ch 53 ; *Id.* ch. 124 §7 ; *Id.* ch. 41 ; 12 Gratt. 663 ; 2 Inst. 697, 703, 736 ; 1 Pet. 102, 134, 135 ; 1 Rob. 573 ; Code, ch. 16, §17 ; 27 Gratt. 110 ; 18 Gratt. 221 ; Acts 1872–3, ch. 114, §§2, 60, 61 ; *Id.* ch. 123 ; Va. L. J. 709 ; 33 Ala. 69 ; 15 Ohio St. 462 ; 20 Conn. 415 ; 4 Iowa 302 ; 9 W. Va. 522 ; Code, ch. 13, §17 ; *Id* ch. 50, §124.

*Smith & Knight,* for defendants in error, relied on the following authorities:

Dillon Mun. Corp. §§64, 65, 446, 686, 693 notes and authorities cited ; *Id* §9, b. ; Acts 1875, ch. 39, §§21, 22, 23, 34 ; Abb. Dig. Law of Corp. p. 496, No. 143 and cases cited ; 6 Hill 531 ; 5 Abb. Pr. 104, 268 ; 7 Abb. Pr. 248.

HAYMOND JUDGE, delivered the opinion of the Court:

James F. Brown obtained a judgment against the city of Charleston, in the circuit court of Kanawha

county, for the sum of $469.20, with legal interest thereon from the 24th day of November, 1876, until paid, and also for costs of suit. Afterwards, on the 1st day of May, 1878, the plaintiff (Brown) caused a writ of *fieri facias* to be issued out of the clerk's office of said court by the clerk thereof upon said judgment for the amount thereof of debt and $18.40 costs of the suit, against the goods and chattels of said city of Charleston. The writ of *fieri facias* was made returnable to rules in said clerk's office on the 1st Monday of July, 1878, and was directed to the sheriff of Kanawha county, in which the city of Charleston is situate, and placed in the hands of such sheriff to be executed on the said 1st day of May, 1878. On the day and year last aforesaid, the plaintiff filed his suggestion in writing in the clerk's office of said circuit court, under the provisions of the 10th section of chapter 141 of the Code of this State of 1868, suggesting "that there is a liability by reason of the lien of said" writ of *fieri facias* upon A. P. Gates, treasurer of said city, of said county. And on the day and year last aforesaid, the clerk of said court issued a summons against said "Gates, treasurer of said city," to appear before said circuit court on the 1st day of the next term thereof, to answer said suggestion. Afterwards, at a term of said circuit court held on the 15th day of May, 1878, the said Gates, treasurer, &c., tendered in court his answer in writing to said suggestion verified by affidavit, which answer is as follows:

"STATE OF WEST VIRGINIA, COUNTY OF KANAWHA, TO-WIT:

"A. P. Gates this day personally appeared before me in my said county, and made oath that he is the treasurer of the city of Charleston; that as such treasurer he has in his hands the sum of $350.00 belonging to said city, and no more; that he had said sum in his hands when said suggestion was served upon him at the

suit of J. F. Brown, and that was all that he had in his hands belonging to said city of Charleston, and was his whole liability to said city as the treasurer thereof at the time of the service of said suggestion; that said money was paid into his hands by the city sergeant of said city from taxes collected by him, the said sergeant, assessed upon the citizens and property of said city, and affiant is not, and was not at the time said suggestion was served, indebted or liable to said city of Charleston in any other way or for any other amount than as before stated as treasurer of said city.

"Given·under my hand, this 14th day of May, 1878.

"EDWARD B. KNIGHT,

"*Notary Public for Kanawha County, W. Va.*"

The said writ of *fieri facias* was in the hands of the sheriff of said county in full force, when the summons· to answer the suggestion was served on said Gates.  On the 27th day of June, 1878, at a term of said court, came the plaintiff, by his attorney, and the defendant, A. P. Gates, and the city of Charleston, by their attorney; and the court, after hearing the answer of said A. P. Gates to said suggestion and the other evidence in the cause · was of opinion that there is no liabilty in· favor of the plaintiff upon the said A. P. Gates by reason of the plaintiff's execution against the city of Charleston and the suggestion aforesaid, and dismissed the said suggestion at the cost of plaintiff therein.

It appears that on the trial of the cause the plaintiff tendered a bill of exceptions to the opinion and judgment of the court, which was signed, sealed and saved to him and made a part of the record.  By which bill of exceptions it appears that on the trial the plaintiff to sustain his case offered in evidence the suggestion aforesaid and summons thereon issued by the clerk as aforesaid, also the writ of *fieri facias* aforesaid, recited in said suggestion, with the endorsement on said writ.  I have already stated so much of said suggestion, summons issued thereon and also of said *fieri facias* as is material to

be stated ; but the endorsement on the writ of *fieri facias* is "no property found," which is signed by the sheriff of said county.

It also appears that the plaintiff proved that the said writ of *fieri facias* was in full force and in the hands of the sheriff of Kanawha county to be executed, when said suggestion was served on the said garnishee, A. P. Gates, viz : on the 1st day of May, 1878, in the said county ; that the plaintiff also read in evidence a written statement of facts agreed, which statement is signed by the counsel for the respective parties, and is as follows : "JAMES F. BROWN v. A. P. GATES, *treasurer &c*, on suggestion as debtor of the city of Charleston.

"It is hereby conceded and agreed by all the parties to this suit, that the judgment recited in the suggestion in this matter was obtained upon twenty coupons for interest respectively on twenty several bonds of the said city of Charleston, issued in the year 1872, each of said coupons being for interest due and payable August 1, 1876, upon said bonds respectively.

"JAMES F. BROWN.
"E. B. KNIGHT,
"*Solicitor for City of Charleston.*"

It appears that the plaintiff also proved by the said A. P. Gates as follows :

"A. P. Gates sworn, says that as treasurer of said city, at time of service, he had in his hands of said city's money $350.00, which was paid him 25th Feburary, 1878 Since that time there has been no funds come into his hands belonging to said city. There was at time of said service, as wharfmaster, money in his hands belonging to said city amounting to $140.00. Since said service he has received nothing as wharfmaster. The $350.00 above mentioned said Gates received from sergeant Rand, who is tax-collector for the city and city sergeant. Gates is wharfmaster for the city. The $140.00 was collected for wharfage in February, March and April,

1878," with the addition as agreed by the counsel for both sides, viz: "That it was the duty of said Gates, as such wharfmaster of the city of Charleston, to pay over the money received, by him as such wharfmaster to the treasurer of said city of Charleston, which treasurer he was during all the time he was such wharfmaster.

"The defendants, the said city of Charleston and said Gates, thereupon introduced H. W. Rand, a witness who proved that said Rand is sergeant of said city of Charleston, and has been for the past eight years; that he collects the taxes, licenses and some of the fines assessed in said city; that on the 25th day of February, 1878, he paid A. P. Gates, treasurer of said city, $350.00, which was all collected on taxes from the citizens of the city; and that the witness was satisfied said $350.00 was collected from the taxes assessed for 1876.

"To the examination of said Rand as a witness by the defendant, the plaintiff, by his counsel, objected, and likewise objected to the said evidence of the said Rand as illegal; which said two exceptions the court overruled, and the plaintiff severally excepted to each of said rulings.

"The defendant further gave in evidence an abstract of the proceedings of the council of the city of Charleston in the words and figures following:

"At a regular meeting of the common council of the city of Charleston, held in the city hall, on Friday, November 24, 1876, the finance committee of said council submitted the following report, which was on motion adopted and ordered to be spread upon the record:

"'Your committee reports that by reference to the settlement recently made with the sergeant, there is in his hands uncollected taxes, &c., to the amount of $31,666.22, and from estimates more recently made by your committee, we find that the following incidental expenses of the city will have to be provided for, viz:

| | |
|---|---|
| Outstanding orders | $3,000 00 |
| For fire department | 2,000 00 |

| | | |
|---|---|---|
| Police department | 2,300 00 | 1879 Special Term. |
| Improvements of streets | 2,000 00 | |
| Interest on bonded debt | 5,000 00 | Brown v. |
| Officers' salaries | 2,000 00 | Gates, treasurer &c. |
| Probable contingencies | 3,000 00 | |
| Total | $19,300 00 | |

" 'This would leave a difference of $12,366.00 between the present assets of the city and the above estimated amount of incidental and current expenses of the city for one year. Your committee recommends that said uncollected taxes, to the amount of $19,300.00, be set off and apart to pay and meet the estimate aforesaid, leaving the difference, $12,366.00 subject to the future order of the council on the general indebtedness of the city. Your committee further reports that by the returns of the city assessor for the year 1876, there is in the city nine hundred and eighty capitations, and that a tax of $2.00 on each would give $1,960.00, and that the valuation of the taxable property, real and personal, for said year 1876 is $1,825,142.00, and that if a levy of $1.25 on each $100.00 thereof was imposed, that it would raise a fund of $22,814.27, and that it will be safe to estimate for the ensuing year $2,500.00 more from fines, wharfage and license will be received. So estimating, we have the following revenue for the ensuing year, viz:

| | |
|---|---|
| From capitation | $ 1,960 00 |
| From levy of $1.25 on property | 22,814 27 |
| From fines, wharfage and license | 2,500 00 |
| Total | $27,274 27 |

" 'Your committee recommend that the capitation tax for the ensuing year be fixed at $2.00 per capita, and that a levy of $1,25 be fixed and imposed on the real and personal property for the ensuing year, and that said sum of $27,274.27, estimated as aforesaid, be set off, retained and held for the sole benefit of the creditors of the city, and that no orders be drawn upon said fund for any other purpose whatever; and that the margin of $12,366.00 hereinafter mentioned be also held subject

to the order of the council for the benefit of the credi-tors of the city, and that among the general creditors specially provided for in said levy of 1875, and to be paid out of the same, are the following named persons:

| | |
|---|---:|
| Henry I. Fisher about | $1,000 00 |
| Kanawha Valley Bank about | 12,500 00 |
| C. J. Botkin about | 2,400 00 |
| James F. Brown about | 1,250 00 |
| H. W. Reynolds about | 550 00 |
| J. C. Arnold about | 500 00 |
| H. W. Reynolds, for Mrs. Henry | 1,600 00 |
| Joseph Sharpe, Survivor, &c., about | 2,400 00 |
| Sarah Neal about | 525 00 |
| Alice Grubb about | 525 00 |

" ' Councilman Sentz introduced the following resolu-tion, which was on motion adopted :

" ' *Resolved*, That the special report of the Finance Committee this day submitted to the council be adopted and spread upon the record, and that a tax of $2.00 be im-posed on each capitation assessed in the city for the year 1876, and that a levy of $1.25 on each $100.00 valuation of the taxable property, real and personal, of the city be imposed for the year 1876 for the specific and purpose recommended in the special report admitted to record.

" ' A copy. Teste :

" ' JOSEPH L. FRY,

" ' *Recorder City of Charleston*.'

" To the admitting of which abstract in evidence the plaintiff, by his council, objected, and his objection was overruled. To which ruling the plaintiff also excepted. And this was all the evidence in the cause. Whereupon the court upon consideration rendered judgment against the plaintiff. And thereupon the plaintiff moved the court to set aside its finding and judgment and award him a new trial, which motion the court overruled. To which ruling the plaintiff excepted. And thereupon the the plaintiff moved the arrest of judgment in the said cause, which motion the court also overruled. To which ruling the plaintiff excepted. And thereupon the plain-tiff tendered this his bill of exceptions to the said sev-

eral rulings of the court, respectively, which is signed,
sealed and saved to him and ordered to be made a part
of the record.

"J. SMITH.    [Seal.]"

To the said judgment of the circuit court rendered on the 27th day of June, 1878, the plaintiff (Brown) upon his petition and assignment therein of error obtained from one of the judges of this Court in vacation a writ of error and *supersedeas ;* and it must now be determined by this Court on review, whether the said circuit court erred in its said judgment to the prejudice of the plaintiff (Brown).

The errors assigned by the plaintiff in his said petition, as well as argued before this Court by counsel for plaintiff, are "1st. That the circuit court erred in dismissing petitioner's cause with costs, and especially in refusing him judgment against A. P. Gates for the amount shown to be due from him to said city, to-wit: $350.00 in the hands of said Gates arising from taxes collected by the city sergeant, and $140.00 collected by said Gates for wharfage due said city. 2d. For other errors apparent upon the face of the record."

The main question involved in the decision of this cause is one of very great importance and interest, and upon which there has been and still is diversity of opinion among respectable courts of last resort in some of the States of the Union. I deem it proper to first ascertain the material statutes of this State bearing upon the question involved, and also upon a proceeding by suggestion to enforce the lien of a *fieri facias.*

On the 19th day of February, 1816, the Legislature of Virginia passed an act entitled "An act to regulate the proceedings in suits against corporations." See Revised Code of 1819, ch. 122, pp. 472, 473. The 1st section of this act provides "That, in all actions or suits which may be instituted against any corporation instead of the process heretofore used to compel the appearance of such corporation, it shall be sufficient to issue a sum-

mons to the sheriff or other proper officer, reciting the cause of action, and summoning the said corporation to appear and answer the same on the proper return day; which summons shall be returnable in like manner, and subject to the same rules and regulations, as other original process." And the 2d section after providing the manner of serving the summons against any banking, turnpike, insurance or other incorporated company also provides: "And if the summons be issued against the corporation of any city, borough or town, service on the mayor, chief magistrate, or in his absence, on the recorder, or, in the absence of the mayor or chief magistrate and recorder, then on any alderman of the corporation, such mayor or other officer being at the time of service within the limits of such corporation shall be deemed sufficient, and on the return of such summons in any of the said cases, the same proceedings to a judgment shall be had against such corporation as are had in other suits at law after the return of a *capias ad respondendum* executed." And the 3d section provides: "That suits in chancery against corporations shall hereafter commence by subpœna," &c., and shall be served in the same manner, and under the same restrictions as thereinbefore provided for the service of a summons in a suit at law. And the proceedings to final decree shall be had against such corporation, as are had in other suits in chancery. The 4th section of said act provides: "That if any judgment at law or decree in chancery, shall be rendered against any corporations, it shall be lawful for the plaintiff in suit, to sue out either a *distringas, fieri facias, levari facias, or eligit,* as he may think proper; and that the said writs of *fieri facias and eligit* may be levied as well on the current money as on the goods and chattels of said corporation."

On the 17th day of March, 1837, the Legislature of Virginia passed an act entitled "An Act amending the act regulating proceedings in suits against corporations." This act makes no material change in the proceedings

at law or equity against municipal or other corporations necessary to be noted here. The 6th section of the act however does contain provisions not found in the said act of 1816, and is as follows: "That if any corporation shall expire or be otherwise dissolved, all the property, whether real or personal, of which it was possessed, and all debts due to it, shall be subject in the first place to the payment of debts due by such corporation, and then to distribution among the members according to their respective interests: and such corporation and the members thereof shall be liable to be sued by any creditor, or by any stockholder thereof, in a court of law or equity, having jurisdiction thereof in the same manner and to the same extent as if such corporation had not expired or had not been dissolved."

Chapter 52 of the Code of this State of 1868, page 388 is headed "Of corporations generally;" and the first section thereof provides that "every corporation as such shall have succession by its corporate name for the time limited in its charter by law; and if no time be limited, perpetually. It shall have a common seal and may renew or alter the same at pleasure. It may sue and be sued; contract and be contracted with, by simple contract or specialty; purchase, hold, use, and grant estate real and personal; appoint officers and agents, prescribe their powers, duties and liabilities, take bond and security from any of them, and fix and pay their compensation; and make ordinances, by-laws, and regulations for the government of its council, board, officers, and agents, and the management and regulation of its property, and business." Code of W. Va. §23 Acts of Legislature of W. Va. 1863 p. 79, §18. The 18th and 19th sections of said chapter 52 are as follows: " 18. In any action brought against a corporation, if it be in the circuit court, process shall be issued as provided in chapter, 124 of this act; or if the action be brought before a justice, process shall be issued as provided in chapter 50 of this act. 19. Attachments may be served upon a company

or corporation as garnishee, in the manner prescribed by the preceding section and in chapter 106 of this act. 20. Provided, that when any suit is brought against a railroad company under the two preceding sections, the agent on whom process may be served shall be construed to include a depot or station agent, in the actual employment of the company, residing in the county or township wherein the action is brought."

The 1st section of chapter 124 of the Code of 1868, provides for the form of writs. The 5th section of same chapter, provides that process to commence a suit shall be by writ commanding the officer to whom it is directed, &c. And the 7th section of the same chapter provides that "it shall be sufficient to serve any process against or notice to a corporation, on its mayor, rector, president, or other chief officer or in his absence from the county in which he resides or in which is the principal office of the corporation against or to which the process or notice is, if it be a town or village on two members of its council, and if it be not a town or village on the cashier or treasurer," &c. Chapter 140 of the Code of 1868 of this State is headed: "Of execution for specific property, and of writs of *fieri facias*." And the first section thereof provides that "against a corporation such executions may issue as against a natural person," &c. The 5th section of same chapter provides, that "by a writ of *fieri facias* the officer shall be commanded to make the money therein mentioned out of the goods and chattels of the person against whom the judgment is. The writ may be levied as well on the current money and bank notes as on the goods and chattels of such persons; and, as against purchasers for valuable consideration without notice and creditors, shall bind what it may be levied on only from the time that the writ is delivered to the officer to be excuted."

The 17th section, clause 13 of chapter 16, of the Code of Va. p. 115, provides, that "the word 'person' may extend and be applied to bodies politic and corporate as well

as individuals." The 17th section, clause 9, of chapter 13, of the Code of 1868, provides : "the word 'person' includes corporations, if not restricted by the context." Chapter 141 of the Code of 1868 is headed : "Means of enforcing recoveries of money otherwise than by levying a writ of *fieri facias.*" The second section of this chapter provides that "every writ of *fieri facias* hereafter issued shall, in addition to the effect which it has under chapter 140, be a lien, from the time that it is delivered to a sheriff or other officer to be executed, upon all the personal estate of or to which the judgment-debtor is possessed or entitled (although not levied on nor capable of being levied upon under that chapter), except in the case of a husband or parent, such estate as may have been listed and set apart as exempt from distress and levy under the provisions of chapter 41, and except that as against an assignee of such estate for valuable consideration, or a person making a payment to a judgment-debtor, the lien by virtue of this section shall be valid only from the time that he has notice thereof. This section shall not impair a lien acquired by an execution-creditor under chapter 140." The 4th and 5th section of said chapter 141, provides : "How a judgment-debtor may be compelled to discover and surrender his estate" &c., and the 10th, 11th, 12th and 13th sections of same chapter are as follows :

" 10. On a suggestion by the judgment-creditor, that by reason of the lien of his writ of *fieri facias,* there is a liability on any other than the judgment-debtor, a summons may be sued out of the office of the clerk of the circuit court of the county in which such other person resides, against such person, to answer such suggestion the return-day of which summons may be the next term of said court."

"11. The person summoned shall be examined on oath. If it appear on such examination that there is any such liability on him, the court may order him to pay any

debts, or deliver any estate for which there is such liability, or pay the value of such estate to any officer whom it may designate ; and the levy of an execution on such order shall be valid, although levied by such officer.

"12. If such person, after being served with a summons twenty days, fail to appear, or if it be suggested that he has not fully disclosed his liability, the proceedings shall be according to the 15th and 16th sections of chapter 106, *mutatis mutandis.*

"13. Any person summoned under the 10th section may before the return day of the summons, deliver and pay to the officer what he is liable for; and the officer shall give a receipt, and make return of what is so paid and delivered."

The 15th and 16th sections of chapter 106 above referred to are as follows:

"15. If any garnishee summoned as aforesaid fail to appear in an attachment at law, the court may either compel him to appear, or hear proof of any debt due by him to, or effects in his hands of, the defendant in such attachment, and make such orders in relation thereto, as if what is so proved had appeared on his examination.

"16. When it is suggested by the plaintiff in any attachment at law, that the garnishee has not fully disclosed the debts due by him to, or effects in his hands of, the defendant in such attachment, the court shall cause a jury to be empanelled, without any formal pleading, to enquire as to such debts and effects, and proceed in respect to any such found by the jury in the same manner as if they had been confessed by the garnishee. If the verdict be in favor of the garnishee, he shall have judgment for his costs against the plaintiff."

The Legislature of this State at its session held in the year 1875, passed an act entitled "an act to amend and re-enact the charter of the city of Charleston, in the county of Kanawha." See chapter 39 of the Acts of 1875 page 47. The 1st section of this act defines the corporate limits of the said city. The 2d section

provides that "the municipal authorities of said city shall be a mayor, recorder and nine councilmen, who together, shall be a common council." The 3d section provides, that "the mayor, recorder and councilmen, as soon as they have been elected and qualified, as hereinafter provided, shall be a body politic, by the name of 'the city of Charleston' and shall have perpetual succession and a common seal; and that by that name they may sue and be sued, implead and be impleaded; and may purchase and hold or sell real estate and other property necessary to unable them the better to discharge their duties and needful for the good order, government and welfare of the said corporation." The 4th section provides, that "all the corporate powers of the said city shall be exercised by the said council or under their authority, except when otherwise provided," &c.

The 6th section provides that the mayor, recorder, sergeant and treasurer shall be elected by the citizens of said corporation who may be entitled under this act to vote. The 21st section of said act provides that the council shall have power to re-survey said town and for this purpose may employ a competent engineer and prescribe his duties, term of office and amount of compensation; to open new streets, and extend, straighten, widen and repair old streets and alleys; to curb and pave streets, sidewalks and gutters for public use, and to alter, improve and light the same; and shall assess upon, and collect from, the property benefited thereby such part of the expense thereof as shall be deemed equitable and just by said council; and shall have control of all avenues for public use in said city; to have the same kept in good order and free from obstructions on or over them; to regulate and determine the width of all streets, sidewalks and public alleys, &c., &c; to organize one or more fire-companies and provide the necessary apparatus, tools, implements, engines or any of them, for their use, and in their discretion to organize a paid fire-department; and to provide sufficient revenues for

the city, and appropiate the same to its expenses ; and to provide for the annual valuation of property and the assessment of taxable persons and property in the city; to adopt rules for the transaction of business and for the government and regulation of its own body ; to promote the general welfare of the city, and to protect the persons and property of the citizens therein, and to appoint such officers as they may deem proper ; to define their powers, prescribe their duties, fix their term of service and compensation, require and take from them bonds, with such sureties and in such penalty, as the council may determine, &c., &c."

Section 22 provides that to carry into effect these enumerated powers, and all others conferred upon the said city or its council expressly or by implication in this or any other acts of the Legislature, the council shall have power to adopt and enforce all needful orders, by-laws, and ordinances not contrary to the laws and Constitution of the State, and to prescribe, impose and enforce reasonable fines and penalties, including imprisonment under judgment and order of the mayor or recorder of said city or the persons lawfully exercising their functions, and the council with the consent of the county-court of Kanawha county, entered of record, may have the right to use the jail of said county for any purpose necessary in the administration of its affairs.

The 23d section provides that it shall be lawful for the council to establish and construct landings, wharves and docks on any ground which does or shall belong to said city, and to repair alter or remove any building, wharf or dock which has been or shall be so constructed, and to levy and collect a reasonable duty on vessels coming to or using the same; and it shall have power to pass and enforce such ordinances as shall be proper to keep the same in good order and repair, to preserve peace and good order at the same and regulate the manner in which they shall be used they shall have power to appoint as many wharfmasters for said city as may

appear necessary to prescribe their duties, fix their fees and make all regulations in respect to such officers as they deem necessary.

The 27th section prescribes the duties of the city sergeant. The 30th section provides that the council shall have power to require and take from the sergeant and treasurer, bonds with sureties satisfactory to the council, in such penalty as it may deem sufficient. * * The treasurer's bond shall be conditioned for the true and faithful performance of his duties as treasurer and that he will faithfully pay over and account for all moneys that shall come into his hands as treasurer, when and as he shall be thereto required by the council.

The 34th section provides that all moneys belonging to said city shall be paid over to the treasurer, and be receipted for in duplicate by him, none of which shall be paid out by him except as the same shall have been approved and ordered to be paid by the council, and the said treasurer shall pay the same upon the certificate of the recorder, or in his absence upon the certificate of the mayor.

The 35th section provides that if the said treasurer shall fail to account for and pay over all or any moneys that shall come into his hands when thereto required by the council, it shall be lawful for the council in the corporate name of the city, by motion before the circuit or county-court of Kanawha county after ten days previous notice, to recover from the treasurer and his sureties, or their personal representatives, any sum that may be due from said treasurer to said city.

There are several other sections to said act of importance, which I deem it unnecessary to further refer to.

As tending to shed some light upon the question involved in this case I propose to consider how questions somewhat similar have been considered and held in other States as well as in this State. In the 5th ed. of Drake on Attachments, at §516 it is said: "The liability of municipal corporations to garnishment has been differently

regarded, in different States.   In New Hampshire, under a statute extending the operation of an attachment to "any corporation possessed of money," &c. of the debtor, it was held that a *town* might be garnished.   In Connecticut, where the statute provides that 'debts due from any person to a debtor' may be attached, the same view was entertained as to the same description of corporation; though in that State it had been previously held that a *county* could not be charged as garnishee.   This decision however, was stated to have rested on the position, that a county could not contract a debt for which an action would lie against it, and was held not to be inconsistent with the views wich controlled the court in sustaining the garnishment of a town.   In Massachusetts, under a statute providing that 'any person or corporation may be summoned as trustee of the defendant,' it was held, that a county might be garnished in respect of compensation due to a messenger in charge of its court-house, under appointment of the county commissioners, at a fixed salary; the compensation being due by contract, and the law of that State declaring that each county 'shall continue a body politic and corporate for the following purposes: to sue and be sued, * * * and to make necessary contracts, and do necessary acts in relation to the property and concerns of the county.'   In Iowa, an incorporated city was charged as garnishee for money due to a defendant, for public work done by him for the city.   In Rhode Island, under a statute authorizing all corporations, unless otherwise provided, to sue and be sued, and be garnished, a city was charged as garnishee on account of money due from it to a member of its police force."   And he cites as authorities sustaining the context *Whedden* v. *Drake,* 5 N. H. 13; *Bray* v. *Wallingford,* 20 Conn. 416; *Ward* v. *Hartford* 12 Conn. 404; *Adams* v. *Tyler,* 121 Mass. 380; *Wales* v. *Muscatine* 4 Iowa 302; *Wilson* v. *Lewis,* 10 R. I. 285.

But Mr. Drake in the same paragraph further says: "In Vermont on the contrary it was held, that a town

was not subject to a garnishment; in Pennsylvania, Maryland, Georgia, Alabama, Tennessee, Missouri, Wisconsin, and Illinois, that a city could not be charged as garnishee; in Minnesota and Arkansas, that a county cannot be garnished; in Alabama, that incorporated commissioners of public schools were a public or municipal corporation, and could not be garnished; and in the District of Columbia, that the District cannot be charged as garnishee of one of its officers on account of salary due him."

And he cites as sustaining these positions *Bradley* v. *Richmond,* 6 Vt. 121; *Erie* v. *Knapp,* 29 Pa. St. 173; *Greer* v. *Rowley,* 1 Pittsburgh 1; *Baltimore* v. *Root* 8 Md. 95; *McClellan* v. *Young,* 54 Ga. 399; *Mobile* v. *Rowland,* 26 Ala. 498; *Parsons* v. *McGavve,* 2 Tenn. *Ch.* 581; *Memphis* v. *Laskie,* 9 Heiskell, 511; *Hawthorn* v. *StLouis,* 11 Mo. 59; *Fortune* v. *St. Louis,* 23 Mo. 239; *Buenham* v. *Fond du Lac,* 15 Wis. 193; *Buffham* v. *Racine,* 26 Wis. 449; *Merwise* v. *Chicago,* 45 Ill.; *McDougal* v. *Hennepin County,* 4 Minn. 184; *Boone County* v. *Keck,* 31 Ark. 387; *Clarke* v. *Mobile School Commissioners,* 36 Ala. 387; *Dew* v. *Lubey,* 1 MacArthur 187.

Mr. Drake in same paragraph then proceeds as follows: "Thus the question stands so far as the adjudications are concerned. The argument in favor of holding such bodies as garnishees is derived from the policy of the law, which subjects all of a debtor's property to the payment of his debts; while the adverse argument is based on the inconvenience and impolicy of interfering with the operations of municipal bodies by drawing them into controversies, in which they have no concern, and diverting the public moneys from the channel in which by the acts or ordinances of the corporation they are required to flow. The weight of authority is manifestly against the proceeding, so far as inferior municipal organizations are concerned. In this connection may properly be mentioned a case which arose in Louisiana, where it was attempted to subject to attachment taxes due from individuals to a

municipal corporation. On high principles of public policy it was, in a learned and elaborate opinion held that the proceeding was unauthorized and inadmissible. And it was so ruled in Tennessee, when the taxes were in the hands of the collector." Drake cites *Egerton* v. *Third Municpality*, 1 La. Ann. 435; *Moore* v. *Chattanooga*, 8 Heiskell 850 ; *Sed contra, Smoot* v. *Hart*, 33 Ala. 69.

In section 516 same edition Mr. Drake says: "Every consideration adverse to subjecting a municipal corporation to garnishment operates with greatly increased force against the garnishment of one of the United States. Of course no State can be sued without its own consent, signified by its own statute law. As we have seen, garnishment is a suit. Therefore a State cannot be garnished without its own consent so signified. * * * And even when a' State has provided by law for itself being sued, it cannot be charged as garnishee of one of its officers, in respect to the salary due him. And this was so held in Georgia as to the superintendent of a railroad which was owned entirely by the State; notwithstanding the Legislature had by law authorized suits for damages to be institued against the road, and prescribed how process should be served upon it. And parties will not be allowed to evade the inhibition of suing a State, by ignoring the State in their suit, and proceeding directly against the public officer having the custody of the money sought to be reached. Thus it was attempted in Tennessee, to reach the salary of the State treasurer, by garnishment in chancery of the State comptroller, whose official duty it was to issue his warrant for the salary ; and in Kentucky, to reach the salary due from the State to a public school-teacher, by garnishment of the school-commissioner, whose duty it was to pay the teacher ; and it was held that such proceedings were not admissible. And the same view was taken in Virginia and Tennessee, when it was sought, in the former, by garnishment of the State treasurer, and in the latter, the State comptroll-

er, to subject to attachment certain bonds deposited with the State by a foreign insurance company to enable it to do business there ; and in Kentucky and Louisiana, when it was attempted, by garnishing the State auditor and treasurer to attach certain money ordered by the Legislature to be paid to an individual. Clearly then the absolute immunity of a State from garnishment, direct or indirect, unless with its own consent expressed by law, must be considered as completely established. This doctrine was applied in Georgia, in a case where it was sought through process issued out of a court of that State while in insurrection against the United States, to charge an agent of the Confederate States in garnishment, as a debtor of the Bank of Louisiana, on the ground that he had in his possession a certain amount of gold coin, which that bank, in order to save it from capture by the United States, had sent from New Orleans to Georgia, when it was seized by the Confederate authorities and by them placed in the garnishee's hands as agent. As these authorities were a *de facto* government, though illegal, it was held, that the rule applied, and the agent could not be charged in respect of the gold coin, which was, when he was garnished, in his hands." The following cases upon this subject are cited by Drake : *Briscoe* v. *Bank*, 11 Pet. 259 ; *Been* v. *Arkansas*, 20 How. (S. C.) Ante §452 ; *McMekin* v. *State*, 9 Ark. 553 ; *Dobins* v. *O. & A. R. R. Co.*, 37 Ga. 240 ; *Tracy* v. *Hembuckle*, 8 Bush 336 ; *Bank of Tennessee* v. *Debsell*, 3 Sneed 379 ; *Rolls* v. *Andes Insurance Co.*, 23 Gratt. 509 ; *Pennebaker* v. *Tomlinson*, 1 Tenn. Ch. 111 ; *Divine* v. *Harvie*, 7 Mon. 439 ; *Wild* v. *Ferguson*, 23 La. Ann. 752 ; *Spalding* v. *Imlay*, 1 Root 511 ; *Wilson* v. *Bank of Louisiana*, 55 Ga.

Dillon in his work on Municipal Corporations 1st. vol. 2d ed., §9 b, p. 92 says : "Municipal corporations are bodies politic and corporate of the general character above described, established by law to share in the civil government of the country, but chiefly to regulate and

administer the local or internal affairs of the city, town or district which is incorporated." A municipal corporation is also defined to be "an investing the people of a place with the local government thereof." Salk. 183; *People* v. *Morris*, 13 Wend. 325, 334; *People* v. *Hurlburt*, 24 Mich. 44. Judge Dillon in 1st vol., §64, p. 184 same ed. says: "Municipal corporations are instituted by the supreme authority of a State for public good. They exercise by delegation from the Legislature a portion of the sovereign power. The main object of their creation is to act as administrative agencies of the State, and to provide for the police and local government of certain designated civil divisions of its territory. To this end they are invested with governmental powers and charged with civil, political and municipal duties. To enable them beneficially to exercise these powers and discharge these duties, they are clothed with the authority to raise revenues by taxation and other modes as by fines and penalties. The revenues of the public corporation is the essential means by which it is enabled to perform its appointed work. Deprived of its regular and adequate supply of revenue, such a corporation is practically destroyed, and the very ends of its creation thwarted. Based upon considerations of this character, it is settled doctrine of the law that the taxes and public revenues of such corporations cannot be seized under execution against them. Such taxes and revenues cannot be seized either in the treasury or when in transit to it. Judgments rendered for taxes, and the proceeds of such judgments in the hands of officers of the law, are not subject to execution unless so declared by statute. The doctrine of the inviolability of the public revenues by the creditor is maintained, although the corporation is in debt and has no means of payment but the taxes which it is authorized to collect." He cites *Edgerton* v. *Municipality*, 7 La. Ann. 435; *Municipality* v. *Hart*, 6 La. Ann. 570; *Railroad Co.* v. *Municipality*, 7 La. Ann. 148; and also

the decision of the Supreme Court of the United States in the late case of *The United States* v. *The B. & O. R. R. Co.*, decided December term 1872.

The, same author, 1st vol. in §65, p. 185 says: "Upon similar considerations of public policy municipal corporations and their officers have usually though not uniformly, been considered *not to be subject to garnishment*, although private corporations, equally with natural persons are liable to this process. The cases on the subject, as respects municipal corporations, are referred to in the note, and it will be seen, on examination that some of them turn on the construction of particular statutes, and that the judges differ in opinion respecting the policy and expediency of subjecting upon general principles such corporations to the process of garnishment. The author suggests, when the question is left entirely open by statute that on principle a municipal corporation should be exempt from liability of this character with respect to its revenues and the salaries of its officers, but that when it owes an ordinary debt to a third person, the mere inconvenience of having to answer as garnishee furnishes no sufficient reason for withdrawing it from the reach of the remedies which the law gives creditors of natural persons and private corporations." He cites *Erie* v. *Knapp*, 29 Pa. St. 173; *Buckley* v. *Eckert*, 3 Barr (Pa) 368 per Sergeant J.; *McDougal* v. *Supervisors*, 4 Minn. 184; *Bradley* v. *Richmond*, 6 Vt. 121; *Burnham* v. *Fon du Lac*, 15 Wis. 193; *Hadley* v. *Peabody*, 13 Gray 200; *Hawthorn* v. *St. Louis*, 11 Mo. 59; *Fortune* v. *St. Louis*, 23 Mo. 239; *Newer* v. *Fallon*, 18 Mo. 277; *Pendleton* v. *Perkins and the City of St. Louis*, 49 Mo. 565; *Stillman* v. *Isham*, 11 Conn. 123, and cases there cited; *Ward* v. *County of Hartford*, 12 Conn. 404, 408; *Bray* v. *Wallingford*, 33 Ala. 69; *Mayor* v. *Roland*, 26 Ala. 498; *Clark* v. *School Commissioners*, 36 Ala. 621; *Williams* v. *Beardman*, 9 Allen 570; *Baltimore* v. *Root*, 8 Md. 95; *Whidden* v. *Drake*, 5 N. H. 13; *Clafin* v. *Iowa City*, 12 Iowa 284; *Williams* v. *Ken-*

*ney,* 98 Mass. 142; *Newark* v. *Funk,* 15 Ohio St. 462; *Clapp* v. *Walker,* 25 Iowa —; *Merwin* v. *Chicago,* 45 Ill. 133.

Judge Dillon in his 2d vol., §446, p. 546 says "In some of the States it is held that the private property of municipal corporations, that is such as they own for *profit,* and charged with no public trusts or uses, may *be sold on execution* against them. In other States either by statute, or on general principles it is declared that judgment against municipal corporations cannot be enforced by ordinary writs of execution, and that the remedy of the creditor is by *mandamus* to compel payment, or the levy of a tax for that purpose. Questions of this kind are influenced much by local legislation. On principle, in the absence of statutable provision it would seem to be a sound view to hold that the right to contract and the power to be sued gives the creditors a right to recover judgments; that judgments should be enforceable by execution against the strictly private property of the corporation, but not against property owned or used by the corporation for public purposes, such as public buildings, hospitals and cemeteries, fire-engines and aparatus, water-works, and the like; and that judgments should not be deemed liens upon real property except when it may be taken in execution. Outside of the New England States the creditors of a municipal corporation cannot resort, for the purpose of making their debts, to the private property of the inhabitants." He cites *Holliday* v. *Frisbie,* 15 Cal. 630; *Davenport* v. *Insurance Co.,* 17 Iowa 276; *Louisville* v. *Commonwealth,* (as to public and private property) 1 Duval (Ky) 295; ante §64 and note; *New Orleans* v. *Insurance Co.,* 23 La. Ann. 61; *Foster* v. *Fowler,* 60 Pa. 27; *Winslow* v. *Commissioners, &c. of County,* 64 N. C. 218; *Gooch* v. *Gregory,* 65 N. C. 142; *Crane* v. *Fon di. Lac,* 16 Wis. 196; *Chicago* v. *Halsey,* 25 Ill.; *Commonwealth* v. *Allegheny County,* 37 Pa. St. 277, 290; *Commonwealth* v. *Beboit,. Ib.* 79; *infra* §686.

Judge Dillon in 2d vol., 2d ed., §685, also says: " *Man-*

*damus* is one of the principal remedies by which municipal and public corporations are compelled to *perform their* duties towards their creditors. The power of the Legislature over these corporation is such that it may require them to levy a tax to pay creditors, and obedience to such requirement may be enforced by *mandamus.* The power of municipal corporations to make contracts and to create liabilities has been before considered, and this authority imposes the duty of providing for the payment of obligations and liabilities in the special mode prescribed by law, and if no such mode is prescribed, then by the levy and collection of taxes under the provisions of the charter or other legislative acts. Whether the duty to provide for the payment of the liabilities of the corporation be specially enjoined, or whether it results from the general powers and nature of the corporation, it may in all proper cases be equally enforced by *mandamus.*" He cites numerous cases in notes 2 and 4 on p. 776 and 1, p. 777.

In the case of *B. & O. R. R. Co.* v. *Gallahen's adm'r,* 12 Gratt. 655, it was held, that "a corporation may be summoned and proceeded against as garnishees, upon proceedings under the Code of Virginia, ch. 151, §2, p. 600." Ever since this decision was made the practice has been in Virginia and this State, so far as I am advised, to proceed against railroad and private corporations by garnishment in attachment cases. The provisions of the Code of this State of 1868, as to garnishment in attachment cases is substantially the same as that above cited in the Virginia Code. But I do not now remember any case in Virginia or in this State, in which the question has been raised or decided, as to whether a municipal corporation can be legally garnished under our attachment law. Nor do I propose to absolutly decide that question in the case at bar, as that question, though somewhat similar, is not the question to be determined in this case.

In the case of *Rolls, assignee* v. *Andes Insurance Co.,*

Special Term, 1879.

Brown
v.
Gates, treasurer &c.

23 Gratt. 509, it was held : "1. The treasurer of the State, who holds bonds of a foreign insurance-company, doing business in the State, under the act of March 3, 1871, is not liable to be summoned as garnishee by a foreign creditor of the insurance-company. 2. A public officer of the State cannot be made liable by attachment at the suit of an individual, for funds in his hands clothed with a trust under the authority of public law. 3. Under the act of February 3, 1866, when a foreign insurance-company shall cease to do business in the State, and its liabilities, fixed or contingent, to citizens of the State shall have been satisfied or terminated, the treasurer is authorized to deliver to such company the bonds and other securities deposited with him. Though the company has ceased business in the State, and its liabilities to citizens of the State have been satisfied or terminated, the bonds in the hands of the treasurer cannot be attached by a foreign creditor, but they must be delivered by the treasurer to the company." The frequent occasions when money or other property is in the hands of officers of the law, and of persons acting under legal authority would naturally give rise to efforts to reach it by attachment against the individuals claiming it, or to whom it might be supposed to belong; and such efforts have been made, in reference to almost all descriptions of persons holding property or money under official or legal authority. Administrators, executors and guardians, ministerial, judicial and disbursing officers, and municipal corporations have all at times been subjected to garnishment; and numerous adjudications as to their liability have been the result. Drake on Attach. 5th ed. §492.

In the case of *Parker . Beale et al* v. *Donnally et al*, 4 W. Va. 648, it was held that "the personal representatives of a deceased debtor are not, as such, the debtors of their testator or intestate, within the sense of the statute. They are not liable in the *debet*, but in the *detinet* only. The personal estate is in their hands to be adminis-

tered according to law, and is not, therefore, the subject of garnishment by the creditors of the estate of the decedent."

In the case of *Mayor and City Council of Baltimore, Garn. of John T. Brashears* v. *Basil Root for use of James Armstrong*, 8 Md. 95, it was held, 1st. "Funds in the hands of the register of the city of Baltimore due by the city for the salaries of city officers, are not, upon grounds of *public policy* and convenience, liable to be *attached* by the creditors of such officers." 2d. "Municipal corporations are parts of the *State Government* exercising delegated political powers for *public purposes*, and the rule exempting funds in the hands of one *State officer* due another from attachment, applies equally to the officers of such corporations." 3d. "The members and officers of public municipal corporations are officers of the government for the administration or discharge of public duties." And 4th. "The Act of 1825, ch. 114, § 2, authorizing attachments on judgments to be laid in the hands of any 'person whatever, corporate or sole' does not include municipal corporations; they are *excepted* by reason and necesity." Judge Eccleston delivered the opinion of the court in this case and cites a number of authorities in support of the decision.

In the case of the *City of Chicago* v. *Halsley*, 25 Ill. 595, it was held that "An execution cannot be issued against a municipal corporation on a judgment for debt or damages recovered against it." In that case Judge Breese who delivered the opinion of the court at pages 596 and 597 says: "It is argued by the appellee, in opposition to these views, that by the 1st section of chap. 57, entitled judgments and executions (Scate's Comp. 602,) and the 26th section, chapter 90, (*ib.* 722), such corporations are embraced. The first section referred to provides, in substance, for issuing execution against the lands and tenements, goods and chattels, and real estate of any person, against whom a judgment is rendered in any court of record either at law or in equity, and that the word

'person,' by section 29 of chapter 90, includes bodies politic, as well as individuals. This legislation can have full effect by linking the words, bodies politic and corporate, to private corporations, or to such public corporations as are not wholly municipal, and this we think is the restricted sense in which the Legislature intended they should be used. They never could have intended they should embrace an incorporated city or town, or any such municipal and political corporation."

In the case of *Elias Merwin* v. *the City of Chicago*, 45 Ill. 133, it was held: 1st that "A municipal corporation is not liable to process of garnishment no matter what may be the character of its indebtedness." 2d. "The case of the *City of Chicago* v. *Halsley*, 25 Ill. 596, cited and commented upon as in harmony with this decision." The opinion of the court in the last named case was delivered by Judge Lawrence.

In the case of *Hawthorn* v. *City of St. Louis*, 11 Mo. 42, it was held that "A public municipal corporation is not like a private corporation liable to be garnished for a sum due an officer of such corporation as part of his salary."

In the case of *Fortune* v. *City of St. Louis*, 23 Mo. 239, it was held that "The city of St. Louis is not subject to the process of garnishment."

In the case of *Pendleton* v. *Perkins and the City of St. Louis*, 49 Mo. 565, it was held that "where a debtor has absconded so that judgment cannot be obtained against him and has no property in the State subject to attachment, but has money in a city treasury belonging to him, it may be reached by bill in equity, in the first instance, without a previous judgment at law and without showing fraud or any other recognized ground of equitable jurisdiction. And the fact that cities are not liable to garnishment under the statutory garnishment, will not protect them from such proceeding in equity."

In the case of *Bradley* v. *Town of Richmond*, 6 Vt. 121,

it was held that "An action cannot be maintained against a town as the trustee of an absconding debtor."

In the case of *Burnham* v. *The City of Fond du Lac*, 15 Wis. 193, it was held that "A municipal corporation is not liable to be made a garnishee in attachment." Dixon, Judge, dissented.

In the case of *Buffham* v. *City of Racine, garnishee*, 26 Wis. 449, the same piinciple was held, Dixon, Judge, dissenting.

In the case of *McClellan* v. *Young*, 54 Ga. 399, it was held that "A municipal corporation is not liable to be garnished for the salaries of its officers, and this is true even if the debt claimed to be due from the officer is for provisions for himself and family."

In the case of *Bulkley* v. *Eckert, et al*, 3 Barr (Pa.) 368, it was held that "Money held by a person in his official capacity as treasurer of the board of school-commissioners, in common with other money, to be applied towards the payment of teachers according to the rules and regulations of the acts of Assembly for the maintenance of public schools, and not as a private debt due him to the defendant, cannot be attached under the act of 1836." The Supreme Court of Pennsylvania is of opinion that on principle a municipal corporation or its officers are not subject to garnishment on attachment or execution, and that by the statute of that State they are not made liable thereto.   29 Pa. St. 173.

In the case of *Moore & Marsh* v. *Mayor and Alderman of Chatanooga*, 8 Heiskel (Tenn.) 850, it was held that "The moneys of a municipal corporation in the hands of a collector, are not subject to garnishment."

In the case of *Neuer* v. *O'Fallen, garnishee, &c.*, 18 Mo. 277, it was held that "The treasurer of a corporation having its money in his hands, is not liable to garnishment in a suit against a creditor of the corporation."

In the case of *City of Memphis* v. *Leski*, 9 Heiskel (Tenn.) 511, it was held : 1st "A municipal corporation is not subject to the process of garnishment at the

1879
Speical Term.

Brown
v.
Gates, treasurer
&c.

suit of a private creditor of its *employe*. Cited 3 King's Dig. 6980; *Bank of Tennessee* v. *Debrell*, 3 Sneed 379. 2d. The Code gives the remedy by garnishment to all persons, and defines 'persons' to include 'corporations,' but the term 'corporations' as here used, implies private and not public corporations. Sneed, Judge, delivered the opinion of the court.

In the case of *McDougal* v. *The Board of Supervisors of Hennepin County, garnishees, &c.*, 4 Minn. 184, it was held that "the 23d section of the garnishee act (Statutes p. 662) which authorizes 'corporations to be proceeded against as garnishees in the same manner and with like effect as individuals 'applies only to private corporations, and was not designed to include municipal corporations charged with the interests of the public. Counties are public corporations and their officers are public officers and cannot be proceeded against as garnishees."

In the case of *Stillman* v. *Isham*, 11 Conn. ——, it was held : "1. Public officers having money in their hands, to which certain individuals are entitled are not liable to the creditors of these individuals in the process of foreign attachment. 2. Therefore, when the State's attorney commenced a suit, in the name of the county treasurer, on a forfeited bail-bond, taken in a criminal proceeding; and during the pendency of such suit, the General Assembly on the application of the person suffering by the offences complained of directed the money which should be recovered on such bond to be paid over to such sufferer; the attorney afterwards received the money due on the bond ; and while it was in his hands, before any demand upon him, a creditor of such sufferer brought foreign attachment; it was held that the attorney having received and held the money, in his official capacity, as agent of the public the process was not sustainable."

In the case of *Edgerton* v. *Municipality*, 1 La. Ann. 435, it seems it was decided that the public taxes and revenues of the corporation could not be seized under

execution, notwithstanding the general provision of the Code of practice of Louisiana, authorizing the seizure under execution of "all sums of money which may be due to the debtor in whatever right"—this general language being construed to refer alone to *rights of property*, and not to taxes imposed for the protection of those rights.

In the case of *Municipality* v. *Hart*, 6 La. Ann. 570, it was held that "taxes imposed by political corporations to whom a portion of the powers of the government are delegated for the purposes of government and police, are not liable to seizure on executions against these corporations; nor are funds collected on judgments for taxes liable to such seizure. But sums due to municipal corporations for paving or on lands taken for paving are liable to seizure."

In the *Railroad Co.* v. *Municipality*, 7 La. Ann. 148, it was held "that perpetual ground rents, created and intended by the Legislature to form part of the permanent revenue of the city to enable it to exercise its municipal powers of police and local government, cannot be sold on execution against the corporation."

In the case of *Mayor* v. *Roland*, 26 Ala. 498, it was held that a municipal corporation cannot by garnishment be made to pay to the creditor of one of its officers the accruing salary of such officer.

In the case of *Smoot* v. *Hart* 33 Ala. 69, it was held that "a judgment creditor of a municipal corporation, having obtained a return of 'no property' on an execution may (Code §2472) by process of garnishment against the marshal, reach and subject the funds of the corporation in his hands arising from taxes, fines and forfeitures." This case is based upon the decision in the *Central Plank Road Case*, 25 Ala. 380, Judge Walker delivered the opinion of the court, and he says the decision in the plank road case is correct, but at pages 72 and 73 he says: It is contended, that the marshal of the city of Watumpka is the mere custodian of the funds of the

city ; that he is a depository or keeper, *virtute officii*, of its funds ; that the money in his hands is really in the possession of the corporation ; that he stands in the relation of a treasurer of a society, or a bank officer. We do not decide, whether the money in his hands could be attached if he stood in the supposed relation to the corporation and to the money. The decision cited by the counsel for the appellee (*Neuer* v. *Fallon,* 18 Mo. 277,) decides that in such case the money could not be reached by garnishment. It was admitted in the court below, as shown by the judgment entry, that the money was received and held by the garnishee as the city marshal. The charter of the city of Watumpka (Pamphlet Acts of '38 and '39 page 44) does not constitute the marshal a treasurer or make him the custodian of the funds of the city. On the contrary, it expressly authorizes the appointment of a treasurer. The garnishment is therefore not against one keeping the funds as a treasurer of the corporation, but against an officer who has collected them for the corporation, and who holds them subject to its demand or order ; and he does not fall within the principle invoked by the counsel, but rather within the principle settled in the *Central Plank Road Co.* v. *Summers & Doty.*"

In the case of the *City of Newark* v. *Funk & Bro.* 15 Ohio St. 462, it was held that "salaries of officers of incorporated cities, due and unpaid, may be subjected by judgment-creditors of such officers to the payment of their judgments, under the provisions of section 458, of the Code of civil procedure." It seem the 458th section of the Code referred to in this decision provides, that an action like this may be brought, to subject to the payment of a judgment when there is not sufficient other property, "any claims, or choses in action due or to become due" to the judgment-debtor and all "money, goods or effects" which he may have in the hands of "any person, body politic or corporate."

In *Bray et al.* v. *Town of Wallingford,* 20 Conn. 416,

it was.held that "a debt due to a territoral corporation in this State, capable of contracting and liable to be sued for them may be secured by the process of foreign attachment."

In the case of *Wales & Son* v. *The City of Muscatine, garnishee*, 4 Iowa 302, it was held that a municipal corporation may be summoned as garnishee under the statute of Iowa, and the indebtedness of such corporation to the party defendant held to respond to the judgment of the plaintiff.

In the case of *Wilden* v. *Drake and the town of Portsmouth, his trustee*, 5 N. H. 13, it was held that "under the statute of July 2, 1825, process of foreign attachment may be maintained against a town."

I have thus cited a number of authorities and decisions of courts upon questions of garnishment of municipal corporations upon attachment, &c., as well also as upon questions directly involved in this case, with the view of getting from these decisions some light, if possible, upon the question involved in this case, and especially as to whether the writ of *fieri facias* could properly or ought to have issued upon the judgment against the city of Charleston in favor of the plaintiff (Brown) mentioned in this case. Chapters 187 and 188, of the Code of Virginia of 1849 and 1850, extended very. much the lien of the writ of *fieri facias* beyond what it formerly was, and prescribed new remedies for the enforcement thereof; and the reason of such extension, it is said, was because 'at the same time, and by the 2d section of said chapter 188, the Legislature abolished the *capias ad satisfaciendum*. Section 3 of chapter 188 of the Code of Virginia is substantially the same as section 2 of chapter 141, p. 671, of the Code of this State.' Section 5 of said chapter 188 of the Code of Virginia is substantially the same as section 4 of the said Code of this State; and section 16 of said chapter 188, is substantially the same as section 10, of said chapter 141 of our said Code.

1879.
Special Term.

Brown
v.
Gates, treasurer
&c.

Syllabus 1.

Syllabus 2.

Syllabus 3.

The first question to be determined in the case at bar is: Do the laws of this State, including the 1st section of chapter 140 of the Code of this State, authorize the issuing of a writ of *fieri facias* upon a judgment for debt or damages against a political public municipal corporation in any case or under any circumstances? I should state here, before proceeding further, that the 2d section of chapter 140 of our Code of 1868 provides, that "on a judgment for money there may be issued a writ of *fieri facias*, but no writ of *levari facias*, or *elegit* shall be issued hereafter, nor a writ of *distringas*, except on a judgment for specific personal property." Considering the legislation of Virginia and of this State from 1816 to and including the Code of 1868, it seems to me, that before and at the time the Code of Virginia of 1849 took effect, a writ of *fieri facias* might issue against a municipal corporation such as a city upon a judgment for money, and that such has been the law from that time to the present. But after a careful consideration of all the authorities which I have cited, and to which I have had access, my conclusion is that by implication the taxes and public revenues of a political public municipal corporation such as the city of Charleston are exempt from the operation of the provisions of the 5th section of chapter 140 of the Code of this State, and the 2d and the 10th sections of said 141st chapter of said Code, and that such taxes and revenues cannot be seized or subjected to a writ of *fieri facias* in the hands of the tax-payers, or in the treasury of such municipal corporation, or in transit to such treasury, by virtue of said writ or by reason of any lien of such *fieri facias* under the said 5th section of said chapter 140 or the said 2d or 10th sections of said chapter 141.

According to authorities I have cited a political public municipal corporation may sometimes own some descriptions of strictly private property, or interest in such property, or have debts of such private nature due to it, which are subject to levy and to the

lien of a writ of *fieri facias*. *City of New Orleans* v. *Home Mutual Insurance Co.*, 23 La. Ann. 61, and authorities there cited as well as authorities hereinbefore cited. And perhaps under the authorities there is some property belonging to such a corporation charged with public trusts, &c., and perhaps other property, which are likewise so exempt, owned and used for public purposes, such as fire engines, &c.; but I do not now decide that question, as it does not fairly arise in this case. Especially I think this exemption of the taxes and public revenues of such corporation should be held to exist in the absence of an express declaration of law to the contrary. " Statutes are sometimes extended to cases not within the letter of them, and cases are sometimes excluded from the operation of statutes, though within the letter; on the principle that what is within the intention of the makers of the statute, is within the statute, though not within the letter ; and that what is within the letter of a statute, but not within the intention of the makers, is not within the statute ; it being an acknowledged rule in the construction of statutes that the intention of the makers ought to be regarded. " *State, for use of Mayor and City Council of Baltimore et al.* v. *Boyd,* 2 G. & J. 374.

Although I do not agree with the decision of the Court in the case of *The City of Chicago* v. *Halsley,* 25 Ill. p. 595, that a writs of *fieri facias* cannot issue against a political public municipal corporation, the syllabus of which I have already cited, in order to strengthen the conclusion to which I have arrived in the case at bar, I deem it proper to copy herein the opinion of the Court as delivered by Judge Breese, which is as follows : "Breese, Judge. This case comes before us on a writ of error to the Superior Court of the City of Chicago refusing to quash an execution issued against the city, on a judgment for damages awarded the defendant in error, on an assessment of damages occasioned by taking certain land of the defendant for an alley-way in said city; and

1879
Special Term.

Brown
v.
Gates, treasurer
&c.

Syllabus 4.

the only question is: Can the ordinary writ of *fieri facias* legally be issued against a municipal corporation on a judgment for debt or damages recovered against it ? There can be no doubt that the property of a private corporation may be seized and sold under a *fi. fa.* for the payment of its debts, as in the case of an individual, such corporation being bound to provide for its just debts, whether payment is made by a forced sale of its property for that purpose, or with money from its safe. The nature, objects and liabilities of political, municipal or public corporations, we think, stand on different grounds. These corporations signify a community, and are clothed with very extensive civil authority and political power. All municipal or public corporations are both public and political bodies. They are the embodiment of so much political power as may be adjudged necessary, by the Legislature granting the charter, for the proper government of the people within the limits of the city or town incorporated, and the due and efficient administration of their local affairs. For these purposes, the authorities can raise revenue by taxation, make public improvements, and defray the expenses thereof by taxation, exercise certain judicial powers and generally act within their limited spheres, as any other political body, restrained only by the charters creating them—beyond them they cannot go. This power of taxation is plenary, and furnishes, ordinarily, the only means such corporations possess, by which to pay their debts. They cannot be said to possess property liable to execution, in the sense an individual owns property so subject, for they have the control of the corporate property only for corporate purposes, and to be used and disposed of to promote such purposes, and such only. Levying on and selling such property, and removing it, would work the most serious injury in any city.

"Many of our cities, Chicago especially, have costly water-works, indispensable to the lives and health of the citizens. These works are as much the property of the city as any other it may control, and in appellee's view, liable

to be seized and sold on execution, to the great discomfort and probable ruin of the inhabitants. Fire-engines are also indispensable; they too can be seized and sold, and a great city exposed to the ravages of fire, and all this to enable one or more creditors of the city to obtain the fruits of judgments against the city, which, by another process, not producing any of these destructive inconveniences, they would fully obtain. The money raised by taxation could also be levied upon, and the whole business of the city broken up and deranged. Its offices and office-furniture, its jails, hospitals and other public buildings, taken from the corporate authorities, and sold to strangers, who would have a right to the exclusive possession of them, if not redeemed. In the absence of an express statute authorizing a proceeding fraught with such consequences, we must hold, that a *fi. fa.* cannot issue against the city of Chicago.

"It is argued by the appellee, in opposition to these views that by the 1st section of chapter 57, entitled judgments and executions (Scates' Comp. 602), and the 29th section, chapter 90 (*Ib.* 722), such corporations are embraced. The 1st section referred to provides; in substance for the issuing execution against the lands and tenements, goods and chattels and real estate of every person against whom a judgment is rendered in any court of record either at law or in equity and that the word person by section 29 of chapter 90, includes bodies politic and corporate, as well as individuals. This legislation can have full effect by linking the words, bodies politic and corporate, to private corporations, or to such public corporations as are not wholly municipal, and this, we think, is the restricted sense in which the Legislature intended they should be used and applied. They never could have intended they should embrace an incorporated city or town, or any such municipal and political corporations. It is urged, further, that inasmuch as the Legislature has made a special provision in favor of counties, exempting them and their property from the operation of such writs,

1879
Special Term.

Brown
v.
Gates, treasurer
&c.

the inference is that they were the only municipal corpo-rations they intended to exempt.

"We cannot from anything contained in that section, or in the act itself—(section 20 chapter 27, Scate's Comp. 300) draw any such inference, as the subject matter then before the Legislature was counties and county-courts—about them and them only were they legislating. Before we can assent to the proposition, that political corpora-tions, clothed with so many important powers of govern-ment, and so essential to be sustained in the exercise of all their rights and privileges, and be secured in their property and means by which their functions can be properly exercised for the benefit of the citizen, we must see some positive act of the Legislature author-izing the issuing of such writ. The property of such corporations, and the taxes collected by them for public purposes, are a constituent part, and a necessary in-gredient of their public power, and are no more liable to to seizure and sale than the whole power itself would be. If not so, a party obtaining a judgment against the city would be able to do indirectly what no power short of the Legislature can do—destroy the corporate powers and franchises by taking away the aliment which sus-tains them. Under our Constitution it cannot be ad-mitted that any power or any individual persons, directly or indirectly, have such an overwhelming influence over other powers as would enable either of them to put an end to their functions and thus disorganize the govern-ment. It cannot be so. The power if conceded, to seize the property of the corporation would involve the right to seize its revenues, and this involves the right to destroy the corporation. The power to create the corporation of the city of Chicago for purposes of local government, involves the power to preserve and protect it ; but that protection would be unavailing, if the cor-poration could be deprived of the means without which it could not perform this function. For all useful and practical purposes, we think the exercise of the right

claimed by the judgment-creditor in this case would as effectually annul the charter of the city, as if it had been repealed by law. This would be repugnant to the spirit of the Constitution. It is true by the charter of the city it can sue and be sued, but it is not an inference, that if sued and a judgment passes against it, an ordinary writ of *fieri facias* can issue under which its corporate property can be seized and sold. Nor is there any necessity for such writ. On a debt being ascertained by judgment against the city, and are fusal to pay it a *mandamus* can issue to compel payment or to compel a levy of taxes sufficient to discharge the judgment. This is the only legal way in which payment can or ought to be enforced. Some adjudged cases have been referred to by appellant as having a bearing on this, but we do not deem it necessary to consider them very carefully—they appear to have been decided upon some statutory provisions. We decide this on principle and in so doing reverse the judgment of the Superior Court and remand the cause, with directions to that court to enter an order quashing the execution."

See as to enforcing duties of municipal and public corporations 2d ed., 2d vol. Dillon on Municipal Corporations, §685, p. 776, §§686, 687 and 688.

It appears that Gates was summoned as the treasurer of the city of Charleston and he filed his answer in writing, sworn to, in court on the 15th day of May, 1878; and it does not appear by the record that the plaintiff (Brown) suggested at that time, or any time afterwards before the trial, that Gates had not fully disclosed his liability in any respect. If such suggestion had been properly made, then the proceedings should have been according to the 15th and 16th sections of chapter 106, *mutatis mutandis*, unless the parties, after such suggestion had been properly made, by consent submitted all questions of law and fact arising in the case to the court in lieu of a jury; and it does not appear that that was done in this case. The plaintiff seems to have gone to trial before the court upon

the answer of Gates, as though no suggestion was necessary to be filed to the answer, and upon the supposition that if at the trial he proved by Gates as a witness that he had not fully disclosed his liability, that that was sufficient. This proceeding was therefore irregular and unauthorized, as it now seems to me. But waiving this irregularity it seems to me that the $140.00 of wharfage in the hands of Gates, as wharfmaster, belonging to the city was part and parcel of the city's legitimate public revenues, and is exempted by implication of law, as the other taxes composing the $350.00.

The questions presented in this case are of very great moment; and the conclusions to which I have arrived have been formed from the best examination I could make of the case and authorities cited by counsel and such other as I have been able to find. But the case has been patiently and as elaborately considered as could be under the circumstances. As to whether the treasurer of the corporation could be summoned as garnishee as the debtor of the city in any case under the view I have taken it is immaterial and unnecessary now to decide.

From the light now before me, I am of opinion that there is no error in the judgment of the circuit court of the county of Kanawha, rendered in this cause on the 27th day of June, 1878, prejudicial to the plaintiff in error; and therefore the said judgment must be affirmed, and the defendant in error recover against the plaintiff in error $30.00 damages and his costs in this court expended about his defense of the writ of error and *supersedeas* in this cause.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.